UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KINGSLEY PALMER,
SHARON PALMER,

      Plaintiffs,

           Case No. 19 CV 5542 (RPK)(CLP)

v.

THE CITY OF NEW YORK,
INSPECTOR ELLIOT COLON,
POLICE OFFICER RAMOS,
ADAM GIACLAONE, SHIELD NO. 13860,
NICHOLAS CARDIERI, SHIELD NO. 11420,
REGGIE AKA FRANK SINGH,
E 40 BUYERS IG, LLC,
STEPHEN SAMUEL WEINTRAUB,

      Defendants.
-----------------------------------------------------------X TRIAL BY JURY DEMANDED

## AMENDED COMPLAINT

Plaintiffs, Kingsley Palmer and his wife, Sharon Palmer by their attorneys Dahiya Law Offices, LLC, complaining of the defendants alleges as follows:

### PRELIMINARY STATEMENT

1. This is a civil action seeking relief including damages for the violation of the Plaintiffs' rights secured by 42 USC §1983, §1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including violation of automatic stay to any legal proceeding against the plaintiffs as statutory granted under Title 11 of the United States Code (the "Bankruptcy Code).

2. The claims arise from June 27, 2019 incident in which police officers of the New York City Police Department ("NYPD"), actively assisted by the other defendants,

1

acting under color of state law, intentionally and willfully subjected plaintiffs to, inter alia, false arrest and false imprisonment and ultimately deprivation of their home in violation of the Due Process.

3. Plaintiffs seeks monetary damages (special, compensatory, and punitive) against the defendants on all counts, including those related to violation of the stay under the Bankruptcy Code.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as the federal claims.

5. Venue is proper in this court under 28 U.S.C. § 1391(b) because the events that give rise to Plaintiff's claims took place in the Eastern District of New York.

## PARTIES

6. Plaintiffs Kingsley Palmer and his wife Sharon Palmer are always a legal resident of the United States and here relevant times resided in Kings County, City and State of New York.

7. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for

enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

8	Police officer Remos (full name unknown) was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, officer Ramos was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Officer Ramos was one of the plaintiffs "arresting officer" and was under the command of the 67th Precinct of the NYPD. Defendant. Defendant Ramos is sued in his individual capacity.

9.	Adam Giaclaone (Giaclaone) Shield No. 13860 a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, officer Giaclaone was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, officer Giaclaone was one of the "arresting officers" of the Plaintiffs and was under the command of the 67th Precinct of the NYPD. Defendant Gaiclaone is sued in his individual capacity.

10.	Nicholas Cardieri (Cardieri) Shield No. 11420 a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, officer Cardieri was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times

relevant hereto, officer Carideri was one of the "arresting officers" of the Plaintiffs and was under the command of the 67th Precinct of the NYPD. Defendant Cardieri is sued in his individual capacity.

11. All other individual defendants ("the officers"), including John Doe #1-2, Individuals including the Precinct-in-Charge Elliot Colon and those whose names are currently unknown to plaintiffs, are employees of the NYPD, and are sued in their individual capacities.

12. Reggie aka Frank Singh (Reggie) and his company, E 40 Buyers IG, LLC individually for their role in having the plaintiffs unlawfully arrested and as well as conspiring to deprive the plaintiffs of their home and as well as for violation of the automatic stay including conversion.

13. Stephen Samuel Weintraub (Weintraub) is the attorney representing E 40 Buyers IG, LLC and related members and who misled the state court and had the police called for false arrest.

13a. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

**FACTUAL ALLEGATIONS**

14. The Plaintiffs owned real property 891 East 40th Street, Brooklyn, New York 11210 (the "Real Property" or "Home").

15. CitiMortgage Inc. brought foreclosure proceedings against the plaintiffs in the Kings County Supreme Court, bearing Index No., 508193/2013. There was a judgment of foreclosure. The Plaintiffs did not have any lawyer in the state court foreclosure. However, he consulted a few people and thus came to know lot of fraudulent action by the mortgage

companies and robo-signing. The plaintiffs's note was purportedly taken over by MTGLQ Investor LP.

16. On or about May 20, 2019, the Plaintiffs brought an Order to Show Cause with the Supreme Court (OSC). Hon. Justice Noah Dear, signed the order. In the order, he said, that all proceedings in the eviction action, Index No. 82907/2018 are stayed. Attached is a copy the Order. **Exhibit A.** Justice Dear scheduled the hearing for June 26, 2019. A copy of the Order was sent to the E40 Buyers, LLC attorney Stephen Samule Weintraub as per orders of the state court.

17. On June 11, 2019, around 11:30 am when the plaintiff Kingsley Palmer was not in his house, three people came by the Plaintiffs' Home, from the office of City Marshall. Ms. Palmer wife of Kingsley Palmer opened the door. The Marshal instructed Ms. Palmer to leave the house, as he had orders of their eviction from the City Court. The plaintiffs's wife pleaded that her husband has a stay from the Supreme Court. She tried to reach Mr. Palmer but could reach him  However, City Marshal official claimed that he had orders of eviction from the civil court of the City of New York. The Marshall official started taking notes regarding the furniture's etc. The plaintiffs's wife fearing that she will be arrested left the house and the Marshall locked up the door. By the time, Mr. Palmer called Ms. Palmer back, she had already left the Home and the city Marshall had taken the Possession of the Plaintiffs' Home. Mr. Palmer who was at work rushed to the Kings County Supreme Court to get the copy of the Order to Show of the Stay. With the copy of the OSC, Mr. Palmer rushed to the city Marshall's office. He reached just before the office was closing for the day. Mr. Palmer was asked by the Marshall's office to come the following day. Very next day early morning around 8:00 am, Mr. Palmer along with his wife,  with the copy of the signed OSC went to the Marshall's office. A woman attendant at the Marshall's office reached out to Reggie, on

a speaker phone and told him that he had to open the door because Mr. Palmer and his family had a right to be in their Home. Reggie responded that he is "not going to open no doors." Thereafter the Plaintiffs came to the undersigned's office. The undersigned repeated to the Marshall's office that the plaintiffs' eviction from their Home was in violation of the state Supreme Court OSC. And the Marshalls office agreed and further stated that plaintiffs with his family could move back to their house.

18. Mr. Palmer kept trying to reach Reggie, however he would ignore their calls. Reggie had changed the locks of the house. The plaintiffs were forced to break the lock to get into their own Home.

19. On June 20, 2019, the Mr. Palmer filed for Chapter 13 bankruptcy protection with this the bankruptcy unit of this Court.

20. On June 26, 2019, the Plaintiffs, both Mr. Palmer and Ms. Palmer went back to the state Supreme Court, Kings County before the Court of Hon. Judge Dear. They did not see the Judge, however met the Court Attorney, when the Plaintiffs' case was called. In the Court, were a lady attorney for MTGLQ. The East 40th Buyers were there. The lawyer for E 40 Buyer, Stephne Samuel Weintraub was there along with Regg/Frank Singh. When Mr. Palmer case was called, Mr. Palmer gave the state court attorney papers showing that he has filed for Chapter 13 bankruptcy protection. The court stated since the plaintiff has sought bankruptcy protection, they will have to adjourn the entire hearing to July 24, 2019 and also stated that meanwhile status quo had to be maintained. In the state courtroom, as soon as new date adjourned date was given, Mr. Weintraub attorney for E 40 Buyers IG, LLC, got angry and started saying they are going to gets cops and get us thrown out. He also said he will not use the Marshall office anymore. He also said that the plaintiffs' bankruptcy papers were fake and that he had filed bankruptcy before too. While walking out of the courtroom, he

said "I don't give a rat ass to those papers."

21. Just a day after the adjournment of June 26 court hearing, on June 27, 2019 around 8 or 9 pm, six police cars arrived at Plaintiffs' Home. Reggie also came with them. Mr. Palmer had just come back after having dropped his wife at her work place. Initially around 4 officers came inside the house and asked if the plaintiff was Kingsley Palmer. When he said yes to their query. The police said that he had to leave and he should not be around. Mr. Palmer was shocked. He showed the police officers, bankruptcy papers as well as copy of the OSC. Mr. Palmer requested the police officer to call their sergeant. A police officer wearing white shirt came to the house. The sergeant police officer said that he had to leave. And when Mr. Palmer further tried to reason with the police office, he was pushed and manhandled with his hands forcibly pulled back for handcuffing. Palmer was arrested in his Home. The police put the handcuffs on Mr. Palmer and took him out of his house. While Mr. Palmer was being taken away in handcuffs, the neighbors came out of their house to watch him being taken away to the police car. The police defendant took Mr. Palmer to the police precinct in Brooklyn. While at the at the precinct, the police officer threatened Mr. Palmer that if he does not tell his wife to leave, they would arrest her also. Mr. Palmer very concerned about the safety of his wife who had just come Home leaving the work, told her to leave otherwise the police would arrest her.

22. When this was happening that very night, Ms. Palmer who is a nursing aid with Americ-Care Home Care, working from 8 pm to 8 am was contacted by her husband around 9 pm. He frantically called her to home immediately. When asked the reason, Mr. Palmer told his wife that he was being arrested. Ms. Palmer decided to leave the work and reach Home. When she walked into the house, she saw Reggie changing the locks of the house. Reggie told Ms. Palmer to immediately leave the place. She asked Reggie as to why her

house security camera is out. Reggie kept shouting at her telling her that he will have to call the police on her. She went into the house and locked it from inside. She kept trying to reach her husband. When Ms. Palmer was trying reach her husband, she receives a call from the Police Precinct with Mr. Palmer on the phone. Mr. Palmer, afraid, told her that he has been arrested and that he is at the police precinct. He further said that she had to leave otherwise they would arrest her also. And soon thereafter Ms. Palmer heard a police officer on the phone telling her that if she opens the door, they will not arrest her. Afraid of her own security and her husband's safety, Ms. Palmer opened the door. There were two police officer at the door and they told her to vacate the place immediately. She picked up her working cloths and then left around 11 pm. Then she called a cab and left to stay with her relatives.

23. Meanwhile, Mr. Palmer was detained at the precinct until 1:00 am and then he was taken to the central booking. From central booking, he was taken to the criminal court in evening. The presiding judge told Mr. Palmer to stay out of trouble and that everything will be sealed in 6 months. Mr. Palmer did not know what happened and he had a nervous breakdown. When he came out he could not go back to his home and contact his wife. His entire belongings were seized and he was ousted from his house unlawfully.

24. Both Plaintiffs suffered severe emotional damage. Ms. Sharon Palmer is diabetic with swellings, suffering serious ailment with her kidneys. She also suffers from high blood pressure. She was traumatized and all her medicines were also in their Home and she could not have access to the same. The emotional trauma and impact of the arrest left Mr. Palmer and his wife, a very devastating impact, which impacted their work and health, both physical and mental and self-respect. Their entire belongings including gadgets, jewelry and furniture's it was all taken away as an official loot by the defendants. After this incident,

owing to emotional breakdown, Mr. Palmer could not work and still continues to suffer from serious debilitating emotional and psychological trauma. This incident also has left the married couple with a terrible sense of loss of self-respect and adversely impacted their married life.

## DAMAGES

25. As a direct and proximate result of the acts of defendants, Plaintiffs suffered the following injuries and damages:

>a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of their person;
>
>b. Violation of their right to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;
>
>c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;
>
>d. Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;
>
>e. Deprivation of the property without the due process;
>
>f. Loss of liberty and property rights;
>
>g. Physical pain and suffering;
>
>h. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety; and
>
>i. Loss of consortium

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

26.. The preceding paragraphs are here incorporated by reference.

27. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights

under color of law and have conspired to deprive her of such rights and are liable to plaintiffs under 42 USC§ 1983.

28. Defendants' conduct deprived plaintiffs of their right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiffs' of their right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

29. Defendants falsely arrested plaintiff Mr. Palmer and failed to intervene in each other's obviously illegal actions. These unlawful actions were done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property. Plaintiffs are informed and believe that the acts of the Defendants and their employees and agents were intentional in failing to protect and preserve Plaintiffs' property and that, at minimum, Defendants were deliberately indifferent to the likely consequence that the property, the plaintiff house would be taken-over and they would be deprived of the same in violation of the laws.

30. As a direct and proximate consequence of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory and punitive damages.

**SECOND CAUSE OF ACTION**
(MUNICIPAL AND SUPERVISORY LIABILITY

31. The above paragraphs are here incorporated by reference.

32. The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs 's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or

customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs s' constitutional rights in this case.

33. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

34. The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs s' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

## THIRD CAUSE OF ACTION
(CONSPIRACY)

35. The above paragraphs are here incorporated by reference.

36. Defendants Reggie and Weintruab agreed to violate the plaintiffs' rights in the manner described above. Further defendants made an agreement to attempt to cover up the Supreme Court order of the restraining order.

37. Defendants acted in furtherance of this agreement by arresting plaintiff Mr. Palmer and bringing charges of trespassing against him and threatening Ms. Palmer to leave her house at the peril of arrest.

38. Plaintiffs were injured as a result of defendants' conspiracy.

## FOURTH CAUSE OF ACTION
(CONSTITUTIONAL TORT)

39. The above paragraphs are here incorporated by reference.

40. Defendants, acting under color of law, violated plaintiffs 's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

41. A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

## FIFTH CAUSE OF ACTION
(FALSE IMPRISONMENT)

42. The above paragraphs are here incorporated by reference.

43. On the night of June 27, 2019. the defendants police escorted by defendant Reggie came to Plaintiff's house without a warrant. Mr. Palmer showed the bankruptcy and state court OSC about his right to be in his Home. However the police defendant ignoring the paperwork produced by Mr. Palmer confined and arrested him. Mr. Palmer was handcuffed

and then confined in the police car taken to the Police Precinct. After few hours, Mr. Palmer was taken to the central booking and finally produced before the state criminal court after several hours of arrest. It was only when criminal court ordered his release that Mr. Palmer was released.

44. Defendants intentionally confined Plaintiff, Kingsley Palmer in his house, in the police precinct and central booking without any warrant or probable cause.

45. Mr. Palmer could not use his phone or get in touch with anyone and was not allowed to move while in custody of the police.

46. Upon information and belief, the Defendants were assisting Reggie and his attorney in carrying our this false arrest.

47. Mr. Palmer protested to his arrest without any justifiable cause and he attempted to reason out with the defendants but to no avail. The defendants just ignored his pleas.

48. The defendants police officers could see every evidently that the house belongings, furniture etc. belonged to the Plaintiffs.

49. The defendant officers were aware there was nothing in the house of the plaintiff which negated the plaintiffs' ownership.

50. The confinement of Mr. Palmer was neither warranted nor privileged.

51. Mr. Palmer did not consent to restrain imposed upon him.

52. Upon information and belief, Reggie and Weintraub aided and abetted in the arrest of Mr. Palmer. Both Reggie and Weintraub had knowledge that the Plaintiffs had stay order from the state court and the bankruptcy court. Both defendants had attended the state court hearing on June 26, 2019 putting them to knowledge of the paperwork.

53. The Defendants knew, or should have known that they had no lawful authority to detain plaintiffs, especially after having been shown the bankruptcy and state court

paperwork.

54. Defendants conduct constituted false imprisonment of plaintiff.

55. As a result of false imprisonment, Plaintiffs suffered damages.

## SIXTH CAUSE OF ACTION
(ASSAULT AND BATTERY)

56. The above paragraphs are here incorporated by reference.

57. The defendant police, on June 27. 2019, without any probable cause intentionally manhandled, pushing and pulling Mr. Palmers hands to his back, handcuffed him.

58. Mr. Palmer did not consent to that bodily contact.

59. The defendant police intentionally physically pushed Mr. Palmer to threaten him into submission thus offending Mr. Palmer personal dignity.

60. Mr. Palmer suffered deep humiliation, fright and mental anguish.

61. Mr. Palmer gets recurring dreams of being physically pushed and arrested, creating severe mental and emotional damage to his well-being.

## SEVENTH CAUSE OF ACTION
(MALICIOUS PROSECUTION)

62. The above paragraphs are here incorporated by reference.

63. On or about June 27, 2019, the defendant police arrested Mr. Palmer without any probable cause solely to benefit Reggie and Weintraub [real understanding is solely known to the participating defendants]. Weintraub lived up to his declaration what he had said on June 26, 2019 in the state court that he would get the police to do the job now.

64. The defendant police arrested Mr. Palmer on false charges of criminal trespass.

65. The defendant police knew about the falseness of the charges against Mr.

Palmer.

66. The defendant police, aided and abetted by Reggie and Weintraub maliciously commenced and continued the false claim against Mr. Palmer.

67. The charges brought by the defendant police were terminated in favor of the plaintiff, Mr. Palmer.

68. There was no probable cause of the arrest and for charges against Mr. Palmer.

69. The police improperly supported Reggie and Weintraub in unlawful takeover of Mr. Palmer's Home.

70. After the arrest, Mr. Palmer and his wife could not stay in their house despite two courts orders of their continued right to stay in their Home.

71. Owing to the arrest of Mr. Palmer and threats to Ms. Palmer, the Police deprived the plaintiffs of their Home for ever.

72. As a result of this malicious prosecution, which was maliciously instigated, continue by the defendant, without probable cause and which was terminated in the plaintiff's favor caused severe damage to the plaintiffs.

## EIGHTH CAUSE OF ACTION
(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

73. The above paragraphs are here incorporated by reference.

74. On June 27, 2019, when the Police defendants, individually and in their personal capacity, came to the plaintiff's home, they knew that it was the Plaintiffs Home.

75. The Police upon arrival at the plaintiffs' Home were produced papers from the state court showing stay against eviction and bankruptcy court filing.

76. The defendant police intentionally ignored the same.

77. The defendant police recklessly ignored the pleas of the Plaintiff about the

15

legitimacy of the plaintiffs' right to stay in their Home.

78. The defendant police officers assisted Reggie and Weintraub, unlawfully arrested Mr. Palmer and coerced Mr. Palmer to call his wife Ms. Palmer to leave the house so that she is not arrested.

79. The arrest of Mr. Palmer and threatened arrest and eviction of Ms. Palmer from their Home caused severe emotional distress to them. Mr. Palmer further felt very humiliated and distraught when he was handcuffed and taken to the police car while the neighbors had collected there to watch.

80. The arrest and loss of their home caused severe emotional distress to the plaintiffs.

### NINTH CAUSE OF ACTION
(DEPRIVATION OF PROPERY WITHOUT THE DUE PROCESS)

81. The above paragraphs are here incorporated by reference. The Fifth Amendment says that no one shall be "deprived of life, liberty or property without due process of law." The Fifth amendment applies to the states through the Due Process Clause of the Fourteenth Amendment.

82. The defendants conspired and did deprive the Plaintiffs of their property possession without the due process.

83. All the belongings of the Plaintiffs including their clothing, furniture, electronic, jewelry etc. have been looted—thanks to the police making it possible and defendants Reggie and his agents to loot it thereafter.

84. Defendants, their employees and agents, owed Plaintiffs a duty under the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution and New York Constitution to protect the personal property of the Plaintiffs. This duty applied to

16

preserving the personal property of individuals arrested and taken into custody.

85. Despite this well-defined duty, Defendants provided Plaintiffs with no notice that their property was at risk of being seized and/or stolen and did not act to preserve the property or provide any means of reclaiming it in a timely manner.

86. Plaintiffs are informed and believe that the acts of the Defendants, their employees and agents, were intentional in failing to protect and preserve Plaintiffs' property and that, at minimum, Defendants were deliberately indifferent to the likelihood that the properties and other assets from their Home would be seized and looted without due process. based on the past occurrences of these same constitutional and statutory violations of the law.

87. Defendants have seized and deprived the personal property of the Plaintiffs without due process, lawful justification, or just compensation. Had the police not enabled this deprivation, the plaintiffs would not have lost what they have lost owing to forcible possession of the house given to Reggie and is agent and company.

88. As a result of lack of due process deprivation Plaintiffs suffered damages as all their belongings and other items of home use, assets, valuable jewelry have been taken away.

**EIGHTH CAUSE OF ACTION**
(RESPONDEAT SUPERIOR)

89. The above paragraphs are here incorporated by reference.

90. Defendants' intentional tortious acts, including those described above were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest under the supervision of the Inspector Eliot Colon.

91.     As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiffs were damaged.

## NINTH CAUSE OF ACTION
(VIOLATION OF THE AUTOMATIC STAY)

92.     The above paragraphs are here incorporated by reference.

93.     The Defendants violated automatic stay as provide pursuant to 11 U.S.C. § 362 when they evicted him using the Police force. He had bankruptcy stay and stay applied to all and any action against both Kingsley Palmer and his wife.

94.     As a result of the violation, the plaintiffs suffered emotional and financial damages including loss of property.

## TENTH CAUSE OF ACTION
(CONVERSION)

95.     The above paragraphs are here incorporated by reference.

96.     Plaintiffs were in possession of their personal property at the time that defendants' agents and employees ordered arrest of the plaintiff, Mr. Palmer and threatened ouster and finally eviction of Ms. Palmer from her house.

97.     On June 27, 2019, owing to the unlawfully detention of the plaintiff, the defendants unlawfully handed over the possession of the House to Reggie and his company. Further the defendants' agents and employees unlawfully prohibited Plaintiffs from securing their personal properties from the Home.

98.     Reggie and his company has unlawfully converted all the valuable assets to his personal use thus depriving the plaintiffs of their valuable assets.

99.     The defendant police had no legitimate governmental interest that gave their agents and employees the legal right or justification to deprive the plaintiffs of their property

without prior notice to Plaintiffs and without a procedure to permit Plaintiffs to recover their property, and without fair compensation to Plaintiffs.

100. Thus, plaintiffs suffered emotional and financial damages including loss of property.

**WHEREFORE,** plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action.
B. Awarding plaintiffs, punitive damages in an amount to be determined by a jury;
C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and
D. Granting such other and further relief as this Court deems just and proper.

Dated: September 11, 2019

 *s/karamvir dahiya*
Karamvir Dahiya
Dahiya Law Offices,
LLC 75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000