19-CV-5542 (FB) (CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KINGLSEY PALMER and SHARON PALMER,

Plaintiffs,

- against -

THE CITY OF NEW YORK, INSPECTOR ELLIOT COLON,
POLICE OFFICER RAMOS, POLICE OFFICER ADAM
GIACALONE, POLICE OFFICER NICHOLAS CARDIERI,
SAMUEL WEINTRAUB, REGGIE (A.K.A. FRANK SINGH), and
E40 BUYERS IG, LLC,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, Inspector*
*Elliot Colon, and Police Officer Ramos*
*100 Church Street, Third Floor*
*New York, New York 10007*

*Of Counsel: James R. Murray*
*Tel:  (212) 356-2372*
*Date of Service to Plaintiffs: October 9, 2020*
*Matter No.:  2020-020462*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL STANDARD....................................................................................................... 6

ARGUMENT

    POINT I

        PLAINTIFFS FAIL TO STATE A CLAIM FOR
        DEPRIVATION OF PROPERTY WITHOUT DUE
        PROCESS ....................................................................................................7

        A)    Plaintiffs inadequately plead that the alleged
                removal of their belongings from The
                Property violated the Due Process Clause of
                the Fourteenth Amendment..................................................................7

        B)    Plaintiffs' due process claim for their removal
                from The Property fails because they had no
                protected interest in The Property and
                received constitutionally adequate process ........................................9

             1)    Plaintiffs are collaterally estopped from
                    arguing that they had a protected interest
                    in The Property ..........................................................................9

             2)    Even if collateral estoppel did not apply,
                    Plaintiffs could not demonstrate on the
                    merits that they had a possessory interest
                    in The Property ........................................................................11

              3)    Because Plaintiffs had no legitimate
                    claim of entitlement to the Property, they
                    were not entitled to any legal process
                    before being removed from it ....................................................12

             4)    Even if Plaintiffs were entitled to pre-
                    removal process, they received
                    constitutionally adequate process ............................................12

**Page**

POINT II

  PLAINTIFFS FAIL TO STATE A CLAIM FOR
  VIOLATION OF THE AUTOMATIC STAY
  PROVISION OF 11 U.S.C. § 362(K) ......................................................13

POINT III

  PLAINTIFF KINGSLEY PALMER FAILS TO
  STATE A CLAIM FOR FALSE ARREST UNDER
  42 U.S.C. § 1983 OR COMMON LAW FALSE
  IMPRISONMENT ...................................................................................15

POINT IV

  OFFICER RAMOS IS ENTITLED TO
  QUALIFIED IMMUNTY ON PLAINTIFFS' DUE
  PROCESS, AUTOMATIC STAY, AND FALSE
  ARREST CLAIMS ..................................................................................18

POINT V

  PLAINTIFF KINGSLEY PALMER FAILS TO
  STATE A MALICIOUS PROSECUTION CLAIM
  UNDER FEDERAL OR STATE LAW .....................................................20

POINT VI

  PLAINTIFFS FAILED TO STATE A CLAIM FOR
  CONSPIRACY UNDER 42 U.S.C. § 1983, 42
  U.S.C. § 1985, OR NEW YORK COMMON LAW ................................21

POINT VII

  PLAINTIFFS HAVE FAILED TO STATE A
  MUNICIPAL LIABILITY CLAIM ...........................................................23

POINT VIII

  PENDENT JURISDICTION SHOULD NOT BE
  EXERCISED AND, IF IT IS, THE STATE LAW
  CLAIMS STILL FAIL .............................................................................25

  A) The Court should decline to exercise pendent
    jurisdiction over Plaintiffs' state law claims .....................................25

**Page**

B)   Should the Court exercise jurisdiction, all state law claims fail on the merits ............................................................25

    1)   Plaintiffs' common law tort claims must be dismissed because Plaintiffs failed to allege that they filed a timely notice of claim ......................................................................25

    2)   Plaintiff Kingsley Palmer failed to state a claim for assault and battery because he did not sufficiently allege the elements of immediate apprehension or excessive force ....................................................................26

    3)   Plaintiffs failed to state a claim for intentional infliction of emotional distress because they insufficiently alleged the element of outrageous conduct ..................................27

    4)   Plaintiffs failed to state a claim for common law conversion because they insufficiently alleged interference with their legitimate possessory interests ...........................................28

    5)   Plaintiffs failed to state a claim under the New York State Constitution because their factual assertions are insufficient and 42 U.S.C. § 1983 provides an adequate alternative remedy ........................................29

    6)   Plaintiffs failed to state a claim for respondeat superior because they have not adequately pled an underlying tort ......................................29

CONCLUSION...........................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Pages**

Alwan v. City of New York,
   311 F. Supp. 3d 570 (E.D.N.Y. 2018) ...................................................................29

Amore v. Novarro,
   624 F.3d 522 (2d Cir. 2010)............................................................................18

Antonio v. Neighborhood Restore Hous. Dev. Fund Corp.,
   No. 19-CV-11084 (LLS), 2020 U.S. Dist. LEXIS 63440
   (S.D.N.Y. Apr. 8, 2020)..............................................................................13

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)..................................................................................6

Awan v. Ashcroft,
   No. 09-CV-1653 (JS)(AKT), 2010 U.S. Dist. LEXIS 103161
   (E.D.N.Y. Sep. 28, 2010)...........................................................................6

Ball v. Miller,
   164 A.D.3d 728, 83 N.Y.S.3d 169 (2d Dep't 2018)............................................27

Baylis v. Marriott Corp.,
   843 F2d 658 (2d Cir. 1988).......................................................................25

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)..................................................................................6

Bray v. City of N.Y.,
   2005 U.S. Dist. LEXIS 21748 (S.D.N.Y. Sep. 30, 2005).......................................9

Calamia v. City of New York,
   879 F.2d 1025 (2d Cir. 1989).....................................................................15

Ciambriello v. County of Nassau,
   292 F.3d 307 (2d Cir. 2002).......................................................................21

Coleman v. Annucci,
   No. 17-CV-5031, 2017 U.S. Dist. LEXIS 212743, 2017 WL 6622544
   (E.D.N.Y. Dec. 28, 2017) ..........................................................................29

Crown Hgts. Shomrim Volunteer Safety Patrol, Inc. v. City of NY,
   No. 11-CV-329 (KAM), 2014 U.S. Dist. LEXIS 136293
   (E.D.N.Y. Sep. 25, 2014).............................................................................7

-iv-

**Cases** **Pages**

Cunningham v. United States,
     472 F Supp. 2d 366 (EDNY 2007) ........................................................26

DeMartino v. N.Y. State Dept. of Labor,
     167 F.Supp. 3d 342 (E.D.N.Y. 2016) ...................................................21

Devenpeck v. Alford,
     543 U.S. 146 (2004)............................................................................15

Fowler v. City of N.Y.,
     No. 13-CV-2372(KAM)(ST), 2019 U.S. Dist. LEXIS 51108
     (E.D.N.Y. Mar. 26, 2019) ...................................................................24

Frederique v. County of Nassau,
     168 F. Supp 3d 455 (E.D.N.Y. 2016) ...................................................28

Fulton v. Robinson,
     289 F.3d 188 (2d Cir. 2002)................................................................20

Ganek v. Leibowitz,
     874 F.3d 73 (2d Cir. 2017)..................................................................18

Garcia v. Doe,
     779 F.3d 84 (2d Cir. 2015)..................................................................18

Gill v. City of New York,
     No. 15-CV-5513 (ARR), 2017 U.S. Dist. LEXIS 42383
     (E.D.N.Y. Mar. 23, 2017) ...........................................................9, 11, 12

Green v. City of Mt. Vernon,
     96 F. Supp. 3d 263 (S.D.N.Y. March 31, 2015) ...................................24

Grinspan v. Grinspan,
     597 B.R. 725 (Bankr. E.D.N.Y. 2019)..................................................13

Guity v Uniondale Union Free Sch. Dist.,
     No. CV 15-5693 (SJF) (AKT), 2017 U.S. Dist. LEXIS 27542
     (E.D.N.Y. Feb. 23, 2017)....................................................................21

Harriott v. Nationstar Mtge. LLC,
     2018 U.S. Dist. LEXIS 141120 (E.D.N.Y. Aug. 17, 2018).......................7

Harsco Corp. v. Segui,
     91 F. 3d 337 (2d Cir. 1996).................................................................30

-v-

**Cases**                                                                                                          **Pages**

Hudson v. Palmer,
    468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)........................................................8

Hyde v. Caputo,
    98-CV-6722 (FB) (ASC), 2001 U.S. Dist. LEXIS 6253
    (E.D.N.Y. May 11, 2001)..............................................................................................25

Jackson v. Suffolk County,
    87 F. Supp. 3d 386 (E.D.N.Y. 2015) ...........................................................................16

Johnson v Suffolk County Police Dept.,
    245 AD2d 340 (2d Dept. 1997) ....................................................................................26

In re Leiba,
    529 B.R. 501 (Bankr. E.D.N.Y. 2015).........................................................................14

Lilakos v. New York City,
    No. 14-CV-5288 (PKC) (LB), 2018 U.S. Dist. LEXIS 35921
    (E.D.N.Y. Mar. 5, 2018) ..............................................................................................11

Marrero v. City of NY,
    33 AD3d 556 (1st Dept. 2006).....................................................................................26

Marvel Characters v. Simon,
    310 F3d 280 (2d Cir. 2002).........................................................................................10

Mathews v. Eldridge,
    424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).................................................13

McLennon v. City of N.Y.,
    171 F Supp. 3d 69 (E.D.N.Y. 2016) .............................................................................6

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    7 F.3d 1085 (2d Cir. 1993)..........................................................................................21

Miller v. Nassau County,
    2015 US Dist LEXIS 164580, [EDNY Oct. 22, 2015,
    No. CV 13-6813 (SJF)(ARL) ......................................................................................22

Miller v. Terrillion,
    436 F. Supp. 3d 598 (E.D.N.Y. January 30, 2020)....................................................20

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978)....................................................................................................23

<u>**Cases**</u>                                                                                     <u>**Pages**</u>

Mutzner v. Comptroller of New York,
   93 Civ. 5526 (SS), 1995 U.S. Dist. LEXIS 11959 (S.D.N.Y. Aug. 17, 1995) ........................28

New York v. Sokol (In re Sokol),
   113 F3d 303 (2d Cir. 1997)................................................................................10

Oklahoma City v. Tuttle,
   471 U.S. 808 (1985).......................................................................................23

Ortiz v. City of New York,
   773 F. App'x 54 (2d Cir. 2019) .........................................................................15

Panetta v. Crowley,
   460 F.3d 388 (2d Cir. 2006)..............................................................................16

Pangburn v. Culbertson,
   200 F.3d 65 (2d Cir. 1999)................................................................................21

Pehush v Town of Wallkill,
   2018 U.S. Dist. LEXIS 8415 (S.D.N.Y. Jan. 17, 2018)........................................29

Pelt v. City of N.Y.,
   No. 11-CV-5633 (KAM)(CLP), 2013 U.S. Dist. LEXIS 122848
   (E.D.N.Y. Aug. 28, 2013) .......................................................................9, 11, 12, 13

Posr v. N.Y. State Ct. Officer,
   2006 US Dist. LEXIS 13934 (E.D.N.Y. Mar. 13, 2006,
   No. 96 CV 5200 (CLP))...................................................................................9

Razzano v. County of Nassau,
   599 F. Supp. 2d 345 (E.D.N.Y. 2009) ................................................................25

Russo v. City of Bridgeport,
   479 F.3d 196 (2d Cir. 2007)..............................................................................18

Samuels v. Air Transp. Local 504,
   992 F. 2d 12 (2d Cir. 1993)................................................................................6

Saucier v. Katz,
   533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ......................................18

Schwasnick v. Fields,
   No. 08-CV-4759(JS), 2010 U.S. Dist. LEXIS 65958 (E.D.N.Y. June 30, 2010)....................9

Segal v. City of New York,
   459 F.3d 207 (2d Cir. 2006)..............................................................................23

**<u>Cases</u>**                                                                                           **<u>Pages</u>**

<u>Smith v. Slevin,</u>
    No. 10-CV-4874 (MKB), 2015 U.S. Dist. LEXIS 43313
    (E.D.N.Y. Mar. 31, 2015) ...................................................................................12

<u>Soliman v City of NY</u>,
    No. 15-CV-5310 (PKC) (RER), 2017 U.S. Dist. LEXIS 50599
    (E.D.N.Y. Mar. 31, 2017) ...................................................................................27

<u>Stancati v. Cnty. of Nassau,</u>
    2015 U.S. Dist. LEXIS 43802 (E.D.N.Y. March 31, 2015) ....................................8

<u>Stewart v. Loring Estates LLC</u>,
    No. 18-CV-2283 (MKB) (SMG), 2020 U.S. Dist. LEXIS 33930
    (E.D.N.Y. Feb. 26, 2020)
    <u>report and recommendation adopted</u>, <u>Parsaram v. Chicago Tit. Ins. Co.</u>,
    No. 18-CV-2283 (MKB) (SMG), 2020 U.S. Dist. LEXIS 44503
    (E.D.N.Y. Mar. 13, 2020 ......................................................................................7

<u>Swanson v. City of N.Y.</u>,
    No. 16-CV-3231 (MKB), 2017 U.S. Dist. LEXIS 114071
    (E.D.N.Y. July 21, 2017) ....................................................................................22

<u>Thaw v. North Shore University Hospital</u>,
    129 AD3d 937 (2d Dept. 2015) ............................................................................26

<u>United Mine Workers v. Gibbs</u>,
    383 U.S. 715 (1966)..............................................................................................25

<u>Wahad v. F.B.I.</u>,
    994 F. Supp. 237 (S.D.N.Y. 1998) .......................................................................29

<u>Webb v. Goord</u>
    340 F.3d 105 (2d Cir. 2003)..................................................................................22

<u>Weyant v. Okst</u>,
    101 F.3d 845 (2d Cir. 1996),
    cert. denied, 528 U.S. 946 (1999) ........................................................................15

<u>Zalaski v. City of Hartford</u>,
    723 F.3d 382 (2d Cir. 2013)..................................................................................18

**<u>Statutes</u>**

11 U.S.C. § 301..............................................................................................................13

11 U.S.C. § 362..........................................................................................................5, 14

| **Statutes** | **Pages** |
|---|---|

11 U.S.C. § 362(a)(3) ........................................................................13, 19

11 U.S.C. § 362(K) .......................................................................13, 14, 15

42 U.S.C. § 1983 ...............................................15, 20, 21, 22, 23, 29

42 U.S.C. § 1985 ..................................................................21, 22, 23

42 U.S.C. § 1985(1)-(3) .................................................................21

Fed. R. Civ. P. 12(b)(6) ..............................................................6, 30

Fed. R. Evid. 201 .............................................................................6

Fed. R. Evid. 201(b)(2) ...................................................................6

N.Y. Gen. Mun. L. § 50-i .........................................................25, 26

N.Y. Gen. Mun. L. § 50-e ........................................................25, 26

N.Y.S. Penal Law § 140.00(3) ........................................................16

N.Y.S. Penal Law § 140.00(5) ........................................................16

N.Y.S. Penal Law § 140.15(1) ........................................................16

**Other Authorities**

New York State Constitution § 5 ....................................................29

New York State Constitution § 6 ....................................................29

New York State Constitution § 12 ..................................................29

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

KINGLSEY PALMER and SHARON PALMER,

                            Plaintiffs,

                   -against-

THE CITY OF NEW YORK, INSPECTOR ELLIOT
COLON, POLICE OFFICER RAMOS, POLICE OFFICER
JOHN DOE 1, POLICE OFFICER JOHN DOE 2,
SAMUEL WEINTRAUB, REGGIE (A.K.A. FRANK
SINGH), and E40 BUYERS IG, LLC,

                         Defendants.

------------------------------------------------------------------------- x

**MEMORANDUM OF LAW
IN SUPPORT OF CITY
DEFENDANTS' MOTION TO
DISMISS PURSUANT TO
FED. R. CIV. P. 12(B)(6)**

20-CV-2009 (LTS) (SLC)

## PRELIMINARY STATEMENT[1]

On June 27, 2019, Police Officer Luis Ramos arrested Plaintiff Kingsley Palmer for

trespassing after Mr. Palmer and his wife, Plaintiff Sharon Palmer, broke the lock to, and

entered, a residence they had not owned since 2018. Despite having had no right to be on the

property, Plaintiffs bring the instant suit to challenge that arrest, and their removal from the

premises, on several grounds. Specifically, they allege they were deprived of property without

due process and that the responding officers violated an automatic bankruptcy stay, falsely

arrested and maliciously prosecuted Plaintiff Kingsley Palmer, and conspired with non-City

Defendants to violate Plaintiffs' rights. They also assert a municipal liability claim and nine

pendent state law claims. These claims are entirely meritless and the Court should dismiss

---

[1] In the event named Officers Giacalone and Cardieri are properly served and represented by the Office of
the Corporation Counsel of the City of New York during the pendency of this motion, City defendants
respectfully request that this motion be deemed to be made on their behalf as well.

Plaintiffs' First Amended Complaint ("FAC") against Defendants City of New York, Police Officer Luis Ramos, and Inspector Elliot Colon ("City Defendants") in its entirety.

Plaintiffs' claims for deprivation of property without due process and violation of the automatic bankruptcy stay fail because judicially noticeable public documents prove Plaintiffs lost title to the property in question in 2018. Similarly, Plaintiffs' false arrest claim fails because Officer Ramos had probable cause to arrest Plaintiff Kingsley Palmer for trespassing based on the statements made to him by a complaining victim and his own observations at the scene. Plaintiffs' malicious prosecution claim is wholly without merit because, as Plaintiff Kingsley Palmer's criminal court certificate of disposition shows, he accepted an adjournment in contemplation of dismissal ("ACD") for the charges stemming from his June 27, 2019 arrest. Because Plaintiffs cannot establish an underlying constitutional violation, their federal conspiracy and Monell claims also fail. Finally, Plaintiffs have not adequately pled their state law claims and, even if they had, the Court should decline to exercise jurisdiction over them.

## STATEMENT OF FACTS[2]

On April 18, 2008, Plaintiffs obtained a $325,000 mortgage from CitiMortgage to finance the purchase of a residence located at 891 E. 40 Street, Brooklyn, New York 11210 (hereinafter "The Property"). City Def. Ex. C.[3] However, on December 23, 2013, CitiMortgage initiated a foreclosure proceeding (hereinafter "the Foreclosure Proceeding") against The Property before The Honorable Noach Dear in state court and, on March 6, 2018, a judgment of foreclosure and sale was entered. City Def. Ex. E and F. On May 24, 2018 The Property was sold at public auction to Defendant E 40 Buyers IG, LLC (hereinafter "Defendant E 40"), a company allegedly

---

[2] The facts alleged in the Complaint are accepted as true herein solely for the purposes of this motion.

[3] The Court may judicially notice City Defendants' Exhibits "A"-"S."

represented by Defendant Stephen Samuel Weintraub, Esq. (hereinafter "Defendant Weintraub")
and allegedly owned by Defendant Frank Singh (A.K.A. Reggie) (hereinafter "Defendant
Singh"). City Def. Ex. F. According to the deed to The Property available on New York City's
Automated City Register Information System (ACRIS), title to The Property transferred to
Defendant E 40 on July 24, 2018. City Def. Ex. G.

On June 27, 2018, Plaintiff Kingsley Palmer brought a vacatur action (hereinafter "the
Vacatur Action") before Judge Dear against CitiMortgage and its assignee, MTGLQ, attempting
to vacate the judgment of foreclosure and sale. City Def. Ex. H. The Vacatur Action failed; on
November 29, 2019, Judge Dear issued a decision and order dismissing the case and enjoining
Plaintiffs from bringing further litigation against CitiMortgage or MTGLQ related to the
mortgage note for The Property. City Def. Ex. I.

After purchasing The Property, Defendant E 40 instituted a holdover proceeding
(hereinafter "the Holdover Proceeding") before The Honorable Jeannine B. Kuzniewski to secure
Plaintiffs' removal from the premises. See City Def. Ex. J. During the trial conducted in the
Holdover Proceeding, Plaintiffs argued that they should not be removed from The Property
because the judgment of foreclosure and sale was invalid. Id. On February 28, 2019, Judge
Kuzniewski issued a Decision and Order awarding Defendant E 40 possession of The Property
and a warrant of eviction against Plaintiffs, the execution of which was stayed until March 31,
2019. Id. On May 20, 2019, Judge Dear signed an order to show cause (hereinafter "the OTSC")
in the Foreclosure Proceeding, which 1) stayed "all proceedings" in the Holdover Proceeding
pending a hearing on whether Plaintiffs' eviction should be further stayed and 2) scheduled a
hearing for June 26, 2019. City Def. Ex. L. On May 23, 2019, the last document on the Holdover

-3-

Proceeding docket was filed—an order dated May 17, 2019 extending the stay of eviction until June 5, 2019. City Def. Ex. K.

Plaintiffs allege that on June 11, 2019—six days after the stay of the warrant of eviction issued in The Holdover Proceeding had expired—the New York City Marshals arrived at The Property, informed Plaintiffs they had orders for their eviction, and removed them from the premises. City Def. Ex. B at ¶ 17. Plaintiffs further claim that, on the following day, they presented a copy of the OTSC to a representative from the Marshals' office, who stated the eviction was improper and informed Defendant Singh, via telephone that "his papers were fraud." Id. Plaintiffs admit that, sometime between June 11, 2019 and June 27, 2019, they broke a lock on The Property and reentered the premises. Id at ¶ 18.

On June 20, 2019, Plaintiff Kingsley Palmer filed a bankruptcy petition in the Bankruptcy Court for the Eastern District of New York. Id at ¶ 19; City Def. Ex. M. However, on June 21, 2019, the Bankruptcy Court notified Mr. Palmer that his filing was deficient because he had failed to upload numerous documents with his petition, including a list of the property comprising his bankruptcy estate. City Def. Ex. O. On June 27, 2019, the only documents filed in Plaintiff Kingsley Palmer's bankruptcy case were the petition, a motion for an extension of the automatic stay, a notice that Mr. Palmer's bankruptcy filing was deficient, a request for notice, and four notices of mailing. City Def. Ex. P & Q. Mr. Palmer did not file any documentation listing The Property as part of his bankruptcy estate until August 8, 2019. City Def. Ex. Q.

Plaintiffs claim that on June 26, 2019, they arrived at Judge Dear's courtroom for the hearing scheduled by the OTSC and spoke to a court attorney, rather than the judge. Def. Ex. B at ¶ 20. According to Plaintiffs, they provided copy of Plaintiff Kingsley Palmer's bankruptcy petition to the court attorney in the presence of Defendants Weintraub and Singh. Id. Plaintiffs

allege that, upon receiving the bankruptcy petition, the court attorney adjourned the hearing originally scheduled for that day to July 24, 2019 and "stated that meanwhile status quo had to be maintained (sic)." Id. Plaintiffs further allege that, after the court attorney adjourned the hearing, Defendant Weintraub stated he was "going to gets (sic) cops and get us thrown out." Id.

On June 27, 2019, a complaining victim, initials "RR", called the New York City Police Department ("NYPD") to report that an individual who had recently been served with eviction papers had entered The Property by breaking a lock. City Def. Ex. R. Dispatch broadcast these statements to police officers in the 67th Precinct, including Officers Ramos, Giacalone, and Cardieri. See Id. After receiving this information, Officers Ramos, Giacalone, and Cardieri responded to The Property, where they spoke to Plaintiff Kingsley Palmer. See City Def. Ex. B at ¶ 21. Plaintiff Kingsley Palmer produced to the officers the OTSC and documents from his bankruptcy case and was subsequently arrested by Police Officer Ramos. Id. Plaintiffs allege that, during the arrest, Plaintiff Kingsley Palmer "was pushed and manhandled with his hands forcibly pulled back for handcuffing." Id. On June 28, 2019, Mr. Palmer was arraigned on charges of Trespass and Criminal Trespass in the Second Degree and accepted an ACD for both crimes. City Def. Ex. S.

Plaintiffs filed the instant lawsuit on October 1, 2019, asserting that Defendants Inspector Elliot Colon, Police Officer Luis Ramos, and John Doe Officers 1-2 deprived them of property without due process, violated the automatic stay provision of  11 U.S.C. § 362, falsely arrested Plaintiff Kingsley Palmer, and conspired with non-City Defendants to deprive Plaintiffs of their rights. City Def. Ex. A. Plaintiffs also asserted a municipal liability claim against the City of New York and a host of pendent state law claims. Id. On September 12, 2020, Plaintiffs filed their FAC against Defendants Police Officer Luis Ramos, Police Officer Nicholas Cardieri,

Police Officer Giacalone (hereinafter "Defendant Officers"), Inspector Elliot Colon, and the City of New York, in which they asserted several new claims, including malicious prosecution, assault and battery, and conversion. City Def. Ex. B.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if the allegations it sets forth, even if accepted as true, would not render the plaintiff's claims plausible on their face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is not plausible on its face unless it is supported by sufficient factual allegations for a court to reasonably infer the defendant is liable for the alleged misconduct. Twombly, 550 U.S. at 556. Though a court must accept the plaintiff's material factual allegations as true when deciding whether a claim is facially plausible, it need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or other conclusory assertions. Iqbal, 556 U.S. 662 at 678.

When ruling on a motion to dismiss, a court should consider the plaintiff's factual allegations, documents incorporated by reference into the complaint, and matters of which judicial notice can be taken. Samuels v. Air Transp. Local 504, 992 F. 2d 12, 15 (2d Cir. 1993); see also McLennon v. City of N.Y., 171 F Supp. 3d 69, 89 (E.D.N.Y. 2016). Under Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Thus, "[o]n a motion to dismiss, courts may take judicial notice of public records, such as properly recorded deeds." Awan v. Ashcroft, No. 09-CV-1653 (JS)(AKT), 2010 U.S. Dist. LEXIS 103161, at *4 (E.D.N.Y. Sep. 28, 2010); see

also Stewart v. Loring Estates LLC, No. 18-CV-2283 (MKB) (SMG), 2020 U.S. Dist. LEXIS 33930, at *22 (E.D.N.Y. Feb. 26, 2020) report and recommendation adopted, Parsaram v. Chicago Tit. Ins. Co., No. 18-CV-2283 (MKB) (SMG), 2020 U.S. Dist. LEXIS 44503, at *5 (E.D.N.Y. Mar. 13, 2020) (noting that, if a case concerns real property in the City of New York, a court may judicially notice a deed available on ACRIS). On a motion to dismiss, a Court may also judicially notice documents filed in prior state court actions. Harriott v. Nationstar Mtge. LLC, 2018 U.S. Dist. LEXIS 141120, at *2-4 (E.D.N.Y. Aug. 17, 2018). Finally, a court may judicially notice statements in a publicly available sprint report for their legal effect, rather than the truth of the matters asserted. Crown Hgts. Shomrim Volunteer Safety Patrol, Inc. v. City of NY, No. 11-CV-329 (KAM), 2014 U.S. Dist. LEXIS 136293, at *6 (E.D.N.Y. Sep. 25, 2014). Accordingly, this Court may judicially notice Defendants Exhibits A through Q.[4]

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO STATE A CLAIM FOR DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

**A) Plaintiffs inadequately plead that the alleged removal of their belongings from The Property violated the Due Process Clause of the Fourteenth Amendment**

When deciding the process to which a plaintiff is entitled under the Fourteenth Amendment, courts distinguish between two kinds of deprivations—those conducted pursuant to

---

[4] These documents are: (1) Plaintiffs' Complaint, City Def. Ex. A, (2) Plaintiffs' First Amended Complaint, City Def. Ex. B, (3) Mortgage Agreement, City Def. Ex. C, (4) Foreclosure Proceeding Summons and Complaint, City Def. Ex. D, (5) Judgment of Foreclosure, City Def. Ex. E, (6) Report of Sale at Public Auction, City Def. F, (7) Deed, City Def. Ex. G, (8) Vacatur Action Summons and Complaint, City Def. Ex. H, (9) Vacatur Action Decision and Order, City Def. Ex. I, (10) Holdover Proceeding Decision and Order, City Def. Ex. J, (11) Holdover Proceeding Order Dated May 17, 2019, City Def. Ex. K, (12) OTSC, City Def. Ex. L, (13) Kingsley Palmer Bankruptcy Petition, City Def. Ex. M, (14) Motion to Extend Automatic Stay, City Def. Ex. N, (15) Notice of Deficient Filing, City Def. Ex. O, (16) Printout of Bankruptcy Docket, City Def. Ex. P, (17) Bankruptcy Schedule, City Def. Ex. Q, (18) Sprint Report, City Def. Ex. R, and (19) Plaintiff Kingsley Palmer Certificate of Disposition, City Def. Ex. S.

a state procedure and those carried out through random, unauthorized acts. See Hudson v. Palmer, 468 U.S. 517, 532-33, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). Where the challenged deprivation was made pursuant to an established state procedure, the plaintiff is entitled to pre-deprivation process because the government can predict when the deprivation will occur. Id. By contrast, the government cannot predict when an official will commit a random unauthorized act, and is therefore only required to afford post-deprivation process for random unauthorized seizures. Id at 532.

Where a plaintiff claims a defendant officer acted pursuant to a state procedure, he must allege sufficient facts to show that such a procedure existed at the time of the deprivation. See e.g. Stancati v. Cnty. of Nassau, 2015 U.S. Dist. LEXIS 43802, *16-17 (E.D.N.Y. March 31, 2015). On the other hand, where the plaintiff alleges the defendant acted randomly and without authorization, he must allege facts demonstrating that he had no adequate state law remedy to recover the property. Hudson, 468 US at 533. Federal courts in New York have found that state law tort causes of action, such as conversion, provide an adequate state law remedy. See e.g. Stancati, 2015 U.S. Dist. LEXIS 43802, *16-17.

Here, Plaintiffs insufficiently pled that their belongings were seized without due process. First, they alleged no facts demonstrating that the seizure was conducted pursuant to a government procedure. Though Plaintiffs assert that the City has "created a policy or custom under which unconstitutional practices occurred," they do not allege that the City had a policy of any kind specifically regarding the post-arrest removal or safeguarding of property. City Def. Ex. B at ¶ 32. To the extent Plaintiffs claim they were denied access to their property pursuant to a random unauthorized act, they assert no facts indicating the state law remedies available to them,

-8-

such as conversion, were inadequate. In fact, Plaintiffs have added a conversion claim in their

FAC, suggesting they believe such a claim would provide an adequate remedy. FAC ¶¶ 95-100.

**B) Plaintiffs' due process claim for their removal from The Property fails because they had no protected interest in The Property and received constitutionally adequate process**

To establish a claim for deprivation of property without due process under the Fourteenth

Amendment, a plaintiff must show "that he: (1) had a protected liberty or property interest and

(2) was deprived of that interest without due process." Pelt v. City of N.Y., No. 11-CV-5633

(KAM)(CLP), 2013 U.S. Dist. LEXIS 122848, at *26 (E.D.N.Y. Aug. 28, 2013). A plaintiff does

not have a protected interest in property to which he has no legitimate claim of entitlement.

Schwasnick v. Fields, No. 08-CV-4759(JS), 2010 U.S. Dist. LEXIS 65958, at *15-16 (E.D.N.Y.

June 30, 2010) (citations omitted). An individual has no legitimate claim of entitlement to

property in which he has no possessory interest. Gill v. City of New York, No. 15-CV-5513

(ARR), 2017 U.S. Dist. LEXIS 42383, at *13 (E.D.N.Y. Mar. 23, 2017). Further, a plaintiff

receives due process if the government provides him adequate notice and an opportunity to be

heard before depriving him of property. Bray v. City of N.Y., 2005 U.S. Dist. LEXIS 21748, at

*13-14 (S.D.N.Y. Sep. 30, 2005). Here, Plaintiffs are collaterally estopped from arguing they

had a protected interest in The Property, cannot establish a protected interest on the merits, and

received even more process than they were entitled to.

**1) Plaintiffs are collaterally estopped from arguing that they had a protected interest in The Property**

The doctrine of collateral estoppel precludes parties from re-litigating issues of fact or

law that they or their privies had a full and fair opportunity to litigate in a prior proceeding. Posr

v. N.Y. State Ct. Officer, 2006 US Dist. LEXIS 13934, at *47 (E.D.N.Y. Mar. 13, 2006, No. 96

CV 5200 (CLP)). When determining whether a party is collaterally estopped from re-litigating an

issue raised in a New York State court, federal courts apply New York law. Marvel Characters v. Simon, 310 F3d 280, 286 (2d Cir. 2002). Under New York law, the party advocating for preclusion must show that the issue in the current case is identical to an issue litigated in a previous case and that the issue was decided on the merits. New York v. Sokol (In re Sokol), 113 F3d 303, 306 (2d Cir. 1997). Then, the party opposing preclusion must show that neither it nor its privies had a full and fair opportunity to litigate the issue in the prior proceeding. Id. When determining whether a party had a full and fair opportunity to litigate an issue, a court will consider how important the issue was in the prior proceeding, whether the party had an incentive to litigate the issue, and the extent to which the party actually litigated it. Id at 307.

Here, Plaintiffs are collaterally estopped from arguing they had a possessory interest in The Property because the judge in Plaintiffs' Holdover Proceeding awarded Defendant E 40 a final judgment of possession approximately four months before the subject incident. City Def. Ex. J. In the Holdover Proceeding, Plaintiffs litigated the same issue they are attempting to litigate here—whether they were entitled to possession of The Property. The issue was central to the Holdover Proceeding because the sole question in that proceeding was whether Plaintiffs had a right to continue living on The Property. Plaintiffs had an incentive to litigate their right to remain on The Property because, at the time, The Property was their primary residence. Because Plaintiffs received a trial during the Holdover Proceeding, they had a full and fair opportunity to litigate the issue. Moreover, they actually litigated their right to be on the premises by arguing in their defense that the judgment of foreclosure and sale was invalid. Finally, Judge Kuzniewski decided on the merits that Plaintiffs had no possessory interest in The Property when she awarded possession of the premises to Defendant E 40 and issued a warrant of eviction against Plaintiffs.

-10-

**2) Even if collateral estoppel did not apply, Plaintiffs could not demonstrate on the merits that they had a possessory interest in The Property**

Federal and state courts in New York routinely hold that a plaintiff has no constitutionally cognizable property interest in a residence he neither owns nor rents. Gill, No. 15-CV-5513 (ARR), at *13; Pelt v. City of New York, No. 11-CV-5633 (KAM) (CLP), 2013 U.S. Dist. LEXIS 122848, at *42 (E.D.N.Y. Aug. 28, 2013) (aggregating cases); see also Lilakos v. New York City, No. 14-CV-5288 (PKC) (LB), 2018 U.S. Dist. LEXIS 35921, at *14-15 (E.D.N.Y. Mar. 5, 2018). For example, in Gill v. City of New York, the plaintiff sued the defendant police officers for depriving him of property without due process by destroying the front door to his residence. Gill, No. 15-CV-5513 (ARR) at *13. The Honorable Allyne R. Ross of the Eastern District of New York held that, although the plaintiff lived at the residence in question, he had no possessory interest in it because a publicly recorded deed established that another individual owned the property at the time of the alleged incident. Id.

Here, Plaintiffs had no legitimate claim of entitlement to The Property because they do not claim to have rented it and public records show they did not own it on June 27, 2019. First, the Report of Sale filed in the Foreclosure Proceeding indicates The Property was sold at public auction to Defendant E 40 on May 24, 2018, almost one year before Judge Dear issued the OTSC and more than one year before Plaintiff Kingsley Palmer filed for bankruptcy or was arrested. City Def. Ex. F. Second, the deed to The Property, publically available via New York City's ACRIS system, shows that title to The Property was transferred to Defendant E 40 on July 24, 2018. City Def. Ex. G. Thus, like the plaintiff in Gill, Plaintiffs in this case cannot establish a possessory interest in The Property because they did not own it on the date of the incident. Third, the decisions in the Vacatur Action and the Holdover Proceeding demonstrate that New York State courts have already upheld the validity of the sale of The Property. City Def. Exs.G & H.

**3) Because Plaintiffs had no legitimate claim of entitlement to the Property, they were not entitled to any legal process before being removed from it**

In New York, an individual is not entitled to legal process before being removed from a residence to which he has no legitimate claim of entitlement. Smith v. Slevin, No. 10-CV-4874 (MKB), 2015 U.S. Dist. LEXIS 43313, at *29-30 (E.D.N.Y. Mar. 31, 2015); Pelt, No. 11-CV-5633 (KAM)(CLP) at *42. This is true even if the individual had lived in the residence before his removal. Pelt, No. 11-CV-5633 (KAM)(CLP) at *42; Gill, No. 15-CV-5513 (ARR) at *13. For example, in Pelt, the plaintiff lived in an apartment for many years at the invitation of the tenant of record. Pelt, No. 11-CV-5633 (KAM)(CLP) at *10. When the tenant was evicted, the plaintiff remained in the apartment until he was ousted by the defendant police officers and New York City Housing Authority employees. Id at 11. The plaintiff alleged that he was deprived of property without due process because he had a right to be in the apartment as a licensee and received no legal process before being evicted. Id at 32-40. The District Court for the Eastern District of New York held that the plaintiff had no right to legal process because he did not rent the apartment and licensees are not entitled to pre-eviction procedures. Id.

Here, Plaintiffs were not entitled to any process before being removed from The Property because, as discussed above, they had no possessory interest in it. In fact, Plaintiffs in this case had an even lesser right to legal process than the plaintiff in Pelt. Because Plaintiffs' right to remain on The Property was less than that of a licensee and even licensees are not entitled to pre-eviction process, Plaintiffs could not have been entitled to such process.

**4) Even if Plaintiffs were entitled to pre-removal process, they received constitutionally adequate process**

When determining whether one has received adequate notice and an opportunity to be heard, a court will consider three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the

-12-

procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). In applying these factors, federal courts in New York have found that state court eviction proceedings provide adequate process. See e.g. Pelt, No. 11-CV-5633 (KAM)(CLP) at *42; see also Antonio v. Neighborhood Restore Hous. Dev. Fund Corp., No. 19-CV-11084 (LLS), 2020 U.S. Dist. LEXIS 63440, at *12-13 (S.D.N.Y. Apr. 8, 2020).

Here, even assuming arguendo that Plaintiffs had some interest in The Property, their due process claim fails because they received adequate process before their removal. Plaintiffs received adequate notice and an opportunity to be heard in the Holdover Proceeding—during which they received a trial and produced arguments in their defense—the Foreclosure Proceeding, and the Vacatur Action. See City Def. Ex. J. During these proceedings, Plaintiffs lost their interest in The Property and City Defendants had no duty to provide further process before removing them and arresting Plaintiff Kingsley Palmer for trespass. Therefore, the claim for deprivation of property without due process should be dismissed as against City Defendants.

## POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE AUTOMATIC STAY PROVISION OF 11 U.S.C. § 362(K)

When one files a bankruptcy petition under 11 U.S.C. § 301, a stay of certain proceedings automatically takes effect to prevent creditors from satisfying their claims through actions outside of the bankruptcy case. Grinspan v. Grinspan, 597 B.R. 725, 733 (Bankr. E.D.N.Y. 2019). This automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

As the House Judiciary Report associated with § 362 explains, property of the estate is "property of the debtor as of the date of the filing of the petition" and property from the estate is "property over which the estate has control or possession." A debtor may obtain damages against anyone who willfully violates the automatic stay provision. 11 U.S.C. § 362(k). However, one cannot willfully violate the automatic stay provision unless he knows an automatic stay has taken effect. In re Leiba, 529 B.R. 501, 507 (Bankr. E.D.N.Y. 2015) (noting that "[w]illful" in the context of § 362(k) means "'any deliberate act taken in violation of the stay, which the violator knows to be in existence.'").

Here, Plaintiffs' claim that Officer Ramos violated the automatic stay provision must fail because the automatic stay did not apply to The Property and, even if it did, Officer Ramos could not have willfully violated it. The automatic stay provision did not apply to The Property because Plaintiffs neither owned it nor had any possessory interest in it at the time Plaintiff Kingsley Palmer filed for bankruptcy, and it was therefore not part of Plaintiff Kingsley Palmer's bankruptcy estate. Even if an automatic stay had applied to The Property, Officer Ramos could not have willfully violated it because he could not have known it was in effect. First, Plaintiffs do not allege they told the officers an automatic stay had taken effect. Second, though Plaintiff Kingsley Palmer claims he produced the OTSC and documents from his bankruptcy proceeding, none of these documents indicated that an automatic stay applied to The Property. City Def. Ex B at ¶ 21. The OTSC was issued one month before Plaintiff Kingsley Palmer filed for bankruptcy, and therefore did not reference the bankruptcy proceeding or an automatic stay. City Def Ex. L. Though Plaintiff Kingsley Palmer's bankruptcy petition listed the address of The Property as Plaintiffs' residence, it neither stated that Plaintiffs owned The Property nor that The Property was part of the bankruptcy estate. City Def. Ex. M. In fact, Plaintiff Kingsley Palmer

did not file any documents purporting to include The Property in his bankruptcy estate until August 8, 2019, over a month after his arrest. City Def. Exs. P & Q.  Further, though the motion for an extension of the automatic stay referenced the stay's existence, it did not explain which property was allegedly subject to it. City Def. Ex. N. Accordingly, the Court should dismiss Plaintiffs' claim for violation of 11 U.S.C. § 362(k) as against City Defendants because the automatic stay provision did not apply to The Property and, even if it did, Officer Ramos was not aware of a stay and therefore could not have willfully violated it.

**POINT III**

**PLAINTIFF KINGSLEY PALMER FAILS TO STATE A CLAIM FOR FALSE ARREST UNDER 42 U.S.C. § 1983 OR COMMON LAW FALSE IMPRISONMENT**

To state a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must allege facts showing that "the defendant intentionally confined him without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), cert. denied, 528 U.S. 946 (1999). Probable cause—even for a crime not listed on the plaintiff's arrest report—is a complete defense to a false arrest claim under the Fourth Amendment. Devenpeck v. Alford, 543 U.S. 146, 152-154 (2004). An officer has probable cause where he has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989).

In the Second Circuit, "[i]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Ortiz v. City of New York, 773 F. App'x 54, 55-56 (2d Cir. 2019) (internal quotation marks omitted).

Once a police officer has a reasonable basis to believe there is probable cause to arrest, he is not required to explore every plausible claim of innocence before making an arrest. Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest." Panetta, 460 F.3d at 396 (quoting Curley, 268 F.3d at 70). Because the standard for false imprisonment under state law is identical to the standard for false arrest under the Fourth Amendment, a court will dismiss a plaintiff's false imprisonment claim if it dismisses his federal false arrest claim. See Jackson v. Suffolk County, 87 F. Supp. 3d 386, 408 (E.D.N.Y. 2015).

In New York, an officer may arrest an individual for Second Degree Criminal Trespass where he has probable cause to believe the individual entered or remained unlawfully in a dwelling. New York Sate Penal Law § 140.15(1). Under the New York Penal Law, a dwelling is "a building which is usually occupied by a person lodging therein at night." New York State Penal § 140.00(3). One enters or remains on property unlawfully if he has no license or privilege to be there. New York State Penal § 140.00(5).

Here, Plaintiffs fail to state a claim for false arrest or false imprisonment because Officer Ramos had probable cause to believe Plaintiff Kingsley Palmer had committed Second Degree Criminal Trespass. Officer Ramos had probable cause to believe The Property was a dwelling and that Plaintiff Kingsley Palmer had entered and remained on the premises because, as Plaintiffs admit in their Complaint, they reentered The Property by breaking a lock, lived there until June 27, 2019, and kept all their belongings there. City Def. Ex. B at ¶¶ 18 & 48. Officer Ramos also had probable cause to believe Mr. Palmer had no license to be on the premises, and was therefore present unlawfully, because, as the Sprint Report demonstrates, a complaining

-16-

victim informed the police that an individual had reentered The Property by breaking a lock after having been served with eviction papers. City Def. Ex. R.

Though Plaintiffs may argue that probable cause dissipated when Plaintiff Kingsley Palmer presented the OTSC and papers from his bankruptcy proceeding, Officer Ramos had no duty to accept these documents as evidence of Plaintiffs' innocence under the totality of the circumstances. After arriving at The Property, Officer Ramos developed no reason to doubt the complaining victim's veracity, as a lock to The Property had in fact been broken and Plaintiff Kingsley Palmer was living on, and storing his belongings inside of, The Property. Additionally, Plaintiff Kingsley Palmer did not possess the deed to The Property, does not claim to have been renting it, and clearly did not have the owner's permission to be there. Further, the OTSC only stayed the Holdover Proceeding pending a hearing scheduled for June 26, 2019, the day before Plaintiff Kingsley Palmer's arrest. Though Plaintiffs allege that a court attorney extended the stay until July 24, 2019, they do not claim to have had documentation of this extension. Even if the OTSC were in effect Plaintiffs had no right to pre-eviction process, as discussed in Point I. Thus, though Defendant E 40 had, and exercised, the option to evict Plaintiffs through a formal proceeding, it had no obligation to do so, and Plaintiff Kingsley Palmer cannot plausibly argue he had a right to remain on The Property merely because he was afforded process to which he was never entitled. Finally, as discussed above, none of the documents filed on the docket of Plaintiff Kingsley Palmer's bankruptcy proceeding stated that an automatic stay applied to The Property. Accordingly, on the totality of the circumstances, there was probable cause to arrest Plaintiff Kingsley Palmer and the Court should therefore dismiss the false arrest and false imprisonment claims as against Police Officer Ramos.

**POINT IV**

**OFFICER RAMOS IS ENTITLED TO
QUALIFIED IMMUNTY ON PLAINTIFFS'
DUE PROCESS, AUTOMATIC STAY, AND
FALSE ARREST CLAIMS**

A defendant officer is entitled to qualified immunity, and is therefore immune from civil

liability, if "'(a) the defendant's action did not violate clearly established law, or (b) it was

objectively reasonable for the defendant to believe that his action did not violate such law.'"

Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Russo v. City of Bridgeport, 479 F.3d

196, 211 (2d Cir. 2007) (internal quotation marks omitted). To show that a right was clearly

established, a plaintiff need not identify a case directly on point, but he must identify precedent

that has "spoken with sufficient clarity to have placed the constitutional question 'beyond

debate.'" Ganek v. Leibowitz, 874 F.3d 73, 81 (2d Cir. 2017). A court will determine whether a

right was clearly established from the perspective of a reasonable officer in the defendant's

position, not from the perspective of a court or attorney. Id (citing Saucier v. Katz, 533 U.S. 194,

202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

In a false arrest case, it is objectively reasonable for an officer to believe he did not

violate any clearly established right if he had arguable probable cause to arrest. Garcia v. Doe,

779 F.3d 84, 92 (2d Cir. 2015) (quoting Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir.

2013) (internal quotation marks omitted)). An officer has arguable probable cause if 1) it was

objectively reasonable for him to believe that probable cause existed or 2) reasonably competent

officers could disagree on whether there was probable cause to arrest. Garcia, 779 F.3d at 92.

When deciding whether an officer acted objectively reasonably, a court will consider the

information the officer possessed at the time of the arrest but will not consider the officer's

subjective intent, motives, or beliefs. Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010).

-18-

Here, Officer Ramos is entitled to qualified immunity on Plaintiffs' due process, automatic stay, and false arrest claims because the procedural posture of Plaintiffs' state court and bankruptcy proceedings was exceedingly complicated and Officer Ramos had at least arguable probable cause to arrest. To evaluate Plaintiffs' claims that they had a right to remain on The Property based on the OTSC and their bankruptcy papers, Officer Ramos would have needed to make complex determinations that no officer could reasonably be expected to make at the scene of an arrest. For instance, he would had to have determined whether the OTSC issued in the Foreclosure Proceeding had any legal effect on the Holdover Proceeding, given that it was issued after a final decision and order was entered in the Holdover Proceeding. If he determined the OTSC did have legal effect, he would then need to evaluate whether its stay of "all proceedings" stayed the execution of the warrant of eviction that had already issued in the Holdover Proceeding or only stayed further litigation. If he found that the OTSC stayed the warrant of eviction, he would still need to determine whether the stay had expired, given that it was issued pending a hearing scheduled for June 26, 2019, the day before Plaintiff Kingsley Palmer's arrest. He could not possibly have evaluated Plaintiffs' claim that a court attorney had extended the stay because Plaintiffs do not claim to have had any documentation of the extension. Additionally, to determine whether the automatic stay applied to The Property, Officer Ramos would have needed prior knowledge of 11 U.S.C. § 362(a)(3) because none of the documents filed on the bankruptcy docket by June 27, 2019 explained how the stay provision operated.

Second, there was at least arguable probable cause to arrest Plaintiff Kingsley Palmer under the totality of circumstances: a complaining victim alleged that Plaintiffs had reentered The Property by breaking a lock after having been served with eviction papers; when Officer

Ramos arrived on the scene, a lock to The Property was broken; Plaintiffs' belongings were on

The Property; and Plaintiff Kingsley Palmer had no documentation indicating he had a right to

be there. Based on these facts, it was objectively reasonable for Officer Ramos to believe there

was probable cause to arrest Plaintiff Kingsley Palmer for Second Degree Criminal Trespass.

**POINT V**

**PLAINTIFF KINGSLEY PALMER FAILS TO
STATE A MALICIOUS PROSECUTION
CLAIM UNDER FEDERAL OR STATE LAW**

To state a § 1983 malicious prosecution claim under New York state common law or

federal law in the Second Circuit, a plaintiff must allege facts which, if true, would establish that

1) the defendant officer initiated or continued a criminal prosecution against the plaintiff; 2) the

defendant officer lacked probable cause to initiate or continue the prosecution; (3) the defendant

officer acted with malice, and 4) the prosecution terminated in the plaintiff's favor. See Fulton v.

Robinson, 289 F.3d 188, 195 (2d Cir. 2002). Under both New York common law and Second

Circuit precedent, a plaintiff's criminal prosecution does not terminate in his favor where he

accepts an ACD. See Miller v. Terrillion, 436 F. Supp. 3d 598, 604 (E.D.N.Y. January 30, 2020);

see also Smith-Hunter 95 N.Y.2d at 197.

Here, the Court must dismiss Plaintiff Kingsley Palmer's malicious prosecution claim

because he has alleged insufficient facts to show that his prosecution was initiated without

probable cause or that it terminated in his favor. For the reasons stated above, Police Officer

Ramos had probable cause to arrest Plaintiff Kingsley Palmer and Plaintiffs allege no facts

which, if true, would demonstrate that probable cause dissipated between the time Mr. Palmer

was arrested and the time his prosecution was initiated. More importantly, Plaintiff Kingsley

Palmer's prosecution did not terminate in his favor, because, as the Kings Criminal Court

Certificate of Disposition shows, Mr. Palmer accepted an ACD on the trespassing charges he was

-20-

arrested for on June 27, 2019. City Def. Ex. S. Accordingly, Plaintiff Kingsley Palmer cannot prevail on his state or federal malicious prosecution claims and the Court should dismiss them.

**POINT VI**

**PLAINTIFFS FAILED TO STATE A CLAIM FOR CONSPIRACY UNDER 42 U.S.C. § 1983, 42 U.S.C. § 1985, OR NEW YORK COMMON LAW**

To prevail on a conspiracy claim under 42 U.S.C. §§ 1983 or 1985, a plaintiff must first establish an underlying constitutional violation. See Guity v Uniondale Union Free Sch. Dist., No. CV 15-5693 (SJF) (AKT), 2017 U.S. Dist. LEXIS 27542, at *82 (E.D.N.Y. Feb. 23, 2017). Therefore, a court must dismiss a conspiracy claim if it dismisses the plaintiff's underlying constitutional claims. DeMartino v. N.Y. State Dept. of Labor, 167 F.Supp. 3d 342, 373 (E.D.N.Y. 2016)

To state a claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Additionally, to state a claim under 42 U.S.C. § 1985, a plaintiff must allege that two or more people conspired to 1) prevent an officer from performing his duties, 2) intimidate a party, witness, or juror in a matter before a court, or 3) deprive an individual of his rights to equal protection or equal privileges and immunities on the basis of his protected class status. 42 U.S.C. § 1985(1)-(3); see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993). Finally, to prevail on a malicious prosecution claim under New York State common law, a plaintiff must prove that the defendants committed an underlying tort and establish "(1) an agreement between two or more

-21-

parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Miller v. Nassau County, 2015 US Dist LEXIS 164580, at *38-39 [EDNY Oct. 22, 2015, No. CV 13-6813 (SJF)(ARL)]).

To adequately plead the defendants conspired with one another, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord 340 F.3d 105, 110 (2d Cir. 2003). A plaintiff cannot meet this burden by merely alleging the defendants conspired with one another. Swanson v. City of N.Y., No. 16-CV-3231 (MKB), 2017 U.S. Dist. LEXIS 114071, at *19 (E.D.N.Y. July 21, 2017). For example, in Swanson, the District Court for the Eastern District of New York held that the plaintiff did not sufficiently allege a meeting of the minds by asserting the defendants "'conspired with each other to undertake a course of conduct,' to deny [the plaintiff] adequate medical care." Id.

Here, as an initial matter, Plaintiffs do not specify in their Complaint what conspiracy cause of action they intend to invoke. To the extent they are suing under §§ 1983 or 1985, their conspiracy claim must fail because, as discussed above, they have not pled a viable underlying constitutional violation. Alternately, to the extent Plaintiffs intend to assert a common law malicious prosecution claim, their claim fails because, as discussed below, they cannot establish an underlying tort.

Even if Plaintiffs had sufficiently pled a viable constitutional violation or tort, their conspiracy claims would still fail because they allege no facts demonstrating an agreement between Defendants or establishing any of the three bases of § 1985 liability. In their FAC, Plaintiffs make three allegations related to a purported meeting of the minds. First, they claim an

unidentified attorney for Defendant Weintraub said he was "going to gets (sic) cops and get us thrown out." City Def. Ex B at ¶ 20. However, this allegation cannot support a meeting of the minds because it demonstrates only that one party to the alleged conspiracy intended to participate in it. Second, Plaintiffs allege that "Defendants Reggie and Weintruab agreed to violate the plaintiffs' rights." Id at ¶ 36. However, even if this allegation were true, it would not establish that any City Defendants participated in the conspiracy. Third, Plaintiffs allege that "defendants made an agreement to attempt to cover up the order of the Supreme Court restraining order (sic)." Id. This allegation is plainly insufficient because, like the allegation in Swanson, it contains no specific facts regarding the circumstances of the alleged conspiracy. Finally, Plaintiffs fail to state a claim under § 1985 because do not allege that any Defendants intended to prevent an officer from performing his duties, intimidate a party or witness, or discriminate against Plaintiffs based on their claimed protected class status. Therefore, the conspiracy claims should be dismissed.

## POINT VII

## PLAINTIFFS HAVE FAILED TO STATE A MUNICIPAL LIABILITY CLAIM

To prevail on a municipal liability claim under § 1983, a plaintiff must prove a municipal policy or custom violated his constitutional rights. See Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985); see also Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978). Thus, a court must dismiss a Monell claim if it dismisses the plaintiff's constitutional claims against all individual defendants. See, e.g., Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

To adequately plead the existence of a policy or custom within the meaning of Monell, a plaintiff must allege "(1) an official policy, endorsed by the municipality; (2) actions taken by officials or policymakers that caused the underlying constitutional violation; (3) a widespread

and persistent practice so manifest as to imply the acquiescence of policymakers; or (4) a failure to train, supervise or discipline officers amounting to deliberate indifference to the rights of those citizens interacting with the officers." Fowler v. City of N.Y., No. 13-CV-2372(KAM)(ST), 2019 U.S. Dist. LEXIS 51108, at *20 (E.D.N.Y. Mar. 26, 2019). A plaintiff cannot sufficiently plead any of the above prongs by merely asserting the municipal defendant had an unconstitutional policy or custom. Green v. City of Mt. Vernon, 96 F. Supp. 3d 263, 302 (S.D.N.Y. March 31, 2015). For example, in Green the plaintiffs alleged, among other things, that the defendant officers "engaged in . . . the custom of the Mt. Vernon Police Department in search warrant cases including to arrest and confine individuals for prolonged periods on 'open' charges, holding Plaintiffs incommunicado and punishing them by imprisonment without trial." Id. In that case, the court held that these assertions "f[e]ll far short" of the pleading standard because they alleged no specific facts supporting their accusation that the Mt. Vernon police department had unconstitutional search warrant practices. Id.

Here, the Court must dismiss Plaintiff's Monell claim because, as explained above, Plaintiffs have not stated any viable underlying constitutional violation. Even if they had, their Monell claim would still fail, as they have not adequately pled the existence of a municipal policy or custom. Plaintiffs' allegations are less specific than the allegations deemed insufficient in Green. Whereas the plaintiff in Green identified a particular custom—detaining arrestees for prolonged periods after executing search warrants—Plaintiffs in this case merely assert that Defendant City "created a policy or custom under which unconstitutional practices occurred" and that a "disturbing number" of officers falsely arrest citizens and use excessive force. City Def. Ex. B at ¶¶ 32-33. Because Plaintiffs have neither stated an underlying constitutional violation nor sufficiently pled a municipal policy or custom, the Court should dismiss their Monell claim.

-24-

**POINT VIII**

**PENDENT JURISDICTION SHOULD NOT BE
EXERCISED AND, IF IT IS, THE STATE
LAW CLAIMS STILL FAIL**

**A)  The Court should decline to exercise pendent jurisdiction over Plaintiffs' state law claims**

A federal court may, at its discretion, assert pendent jurisdiction over state law claims that share a common nucleus of operative fact with one or more properly pleaded federal claims. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). However, "'[w]hen all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims.'" Baylis v. Marriott Corp., 843 F2d 658, 665 (2d Cir. 1988) (quoting Gibbs, 383, U.S. at 726). Here, the Court should decline to exercise pendent jurisdiction over Plaintiffs' state law claims for false imprisonment, malicious prosecution, conspiracy, assault, battery, intentional infliction of emotional distress, conversion, violations of the New York State Constitution, and respondeat superior because, for the reasons stated above, Plaintiffs have failed to plead a viable federal claim.

**B)  Should the Court exercise jurisdiction, all state law claims fail on the merits**

**1)  Plaintiffs' common law tort claims must be dismissed because Plaintiffs failed to allege that they filed a timely notice of claim**

New York General Municipal Law §§ 50-e and 50-i requires "any party asserting a claim sounding in tort against a municipal entity, or its employees acting in the scope of their employment, to file a notice of claim within 90 days of the incident giving rise to the claim." Razzano v. County of Nassau, 599 F. Supp. 2d 345, 354 (E.D.N.Y. 2009). "Under Section 50-i '[a] plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim.'" Id (quoting Hyde v. Caputo, 98-CV-6722 (FB) (ASC), 2001 U.S. Dist. LEXIS 6253, at *13 (E.D.N.Y. May 11, 2001). Here, Plaintiffs' common law tort claims must be dismissed

-25-

because Plaintiffs failed to allege that they filed a timely notice of claim pursuant to §§ 50-e and

50-i, and upon information and belief, did not file one within the statutory period.

> **2) Plaintiff Kingsley Palmer failed to state a claim for assault and battery because he did not sufficiently allege the elements of immediate apprehension or excessive force**

A plaintiff fails to state a claim for assault unless he pleads that the defendants undertook

intentional "physical conduct placing the plaintiff in imminent apprehension of harmful contact."

Thaw v. North Shore University Hospital, 129 AD3d 937, 938-939 (2d Dept. 2015). To state a

claim for battery, the plaintiff must allege facts demonstrating that the defendant 1) intentionally

2) made bodily contact with him 3) that was harmful or offensive in nature. Thaw, 99 AD3d at

760. Where the plaintiff alleges a defendant police officer battered him in the course of an arrest,

the standard of liability depends on whether the officer had probable cause. Cunningham v.

United States, 472 F Supp. 2d 366, 381 (EDNY 2007). Where an officer lacks probable cause, he

commits battery merely by touching the plaintiff to effectuate the arrest. Johnson v Suffolk

County Police Dept., 245 AD2d 340, 341 (2d Dept. 1997). However, where an officer has

probable cause to arrest, he commits battery only if he uses more force than is necessary to

conduct the arrest. See Cunningham v United States, 472 F. Supp. 2d 366, 383 (E.D.N.Y. 2007);

see also Marrero v. City of NY, 33 AD3d 556, 557 (1st Dept. 2006) (dismissing a battery claim

where the defendant officer had probable cause to arrest and the record was "devoid of any

evidence that the force used to make the arrests was excessive").

Here, Plaintiff Kingsley Palmer failed to state viable claims for assault or battery because

Plaintiff alleges no facts demonstrating the Defendant Officers placed him in immediate

apprehension of harmful contact or used more force than was necessary to effectuate his lawful

arrest. Though Plaintiff Kingsley Palmer alleges the Defendant officers "manhandled" him by

pushing him and pulling his arms behind his back, he does not allege that he feared this bodily

contact before it occurred. City Def. Ex. B at ¶ 21. Further, Plaintiff Kingsley Palmer's arrest was lawful, as explained above, and he has not sufficiently alleged that the Defendant Officers used more force than necessary to effectuate his arrest. Rather than claiming he willingly submitted to the arrest, Plaintiff Kingsley Palmer alleges that the Defendant officers "threaten[ed] him into submission," suggesting that he initially resisted. City Def. Ex. B at ¶ 59. Additionally, Plaintiff Kingsley Palmer neither explains what he means by "manhandled" nor asserts that the Defendant officers pulled his arms back more forcefully than was necessary to apply the handcuffs. Because Plaintiff Kingsley Palmer has not sufficiently alleged that he was in immediate apprehension, that his arrest was unlawful, or that the Defendant Officers used excessive force, his assault and battery claims fail.

### 3) Plaintiffs failed to state a claim for intentional infliction of emotional distress because they insufficiently alleged the element of outrageous conduct

To state a claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must allege, among other things, that the defendant committed "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Soliman v City of NY, No. 15-CV-5310 (PKC) (RER), 2017 U.S. Dist. LEXIS 50599, at *28 (E.D.N.Y. Mar. 31, 2017) (internal quotations omitted). A police officer does not commit extreme and outrageous conduct where he merely arrests a suspect based on the allegations of a complaining victim. See e.g. Ball v. Miller, 164 A.D.3d 728, 83 N.Y.S.3d 169 (2d Dep't 2018). For example, in Ball v. Miller, the Second Department of the New York State Appellate Division granted summary judgment for the defendants on the plaintiff's intentional infliction of emotional distress claim where the defendant officers arrested the plaintiff for criminal sexual acts based on information provided by an accuser, even though the charges against the plaintiff

were ultimately dismissed and his case was sealed. Id. Similarly, here the Defendant Officers did not commit extreme and outrageous conduct merely by arresting Plaintiff Kingsley Palmer based on the complaining victim's statements and Mr. Palmer's lack of documentation.

    **4) Plaintiffs failed to state a claim for common law conversion because they insufficiently alleged interference with their legitimate possessory interests**

To prevail on a cause of action for conversion, "a plaintiff must show (1) a possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Frederique v. County of Nassau, 168 F. Supp 3d 455, 485 (E.D.N.Y. 2016) (internal quotation omitted). A law enforcement official does not commit conversion merely by evicting someone from a residence. Mutzner v. Comptroller of New York, 93 Civ. 5526 (SS), 1995 U.S. Dist. LEXIS 11959, at *19 (S.D.N.Y. Aug. 17, 1995). For example, in Mutzner v. Comptroller of New York, the plaintiffs sued the defendant sheriff for conversion on the ground that, after evicting them, the sheriff allowed the new owners to remove the plaintiffs' belongings from the property. Id. The Honorable Sonia Sotomayor granted summary judgment for the defendant sheriff on the grounds that temporarily entrusting an evictee's property to the title holder is a "common, and well established practice under New York law" and that the plaintiffs did not attempt to recover their property from the new owners.

Here, Plaintiffs failed to state a claim for conversion based either on their removal from The Property or the alleged seizure of their belongings. To the extent Plaintiffs premise their conversion claim on their removal from The Property, their claim fails because, as explained above, they had no possessory interest in it. Further, like the sheriff in Mutzner, the Defendant Officers did not commit conversion by allowing the title holder, Defendant E 40, to temporarily possess Plaintiffs' belongings. Finally, like the plaintiffs in Mutzner, Plaintiffs in this case do not

claim they attempted to recover their belongings from Defendants Reggie or E 40. Accordingly, the conversion claim is insufficiently pled and should therefore be dismissed.

### 5) Plaintiffs failed to state a claim under the New York State Constitution because their factual assertions are insufficient and 42 U.S.C. § 1983 provides an adequate alternative remedy

"No explicit constitutional or statutory authority sanctions a private right of action for violations of the New York State Constitution." Wahad v. F.B.I., 994 F. Supp. 237, 238 (S.D.N.Y. 1998). Moreover, courts in the Second Circuit have uniformly held that a plaintiff has no implied private right of action under the New York State Constitution where 42 U.S.C § 1983 provides an adequate alternative remedy. Alwan v. City of New York, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (collecting cases). Section 1983 provides an adequate remedy where it permits the plaintiff to recover for the same alleged misconduct that the New York State Constitution does. See Coleman v. Annucci, No. 17-CV-5031, 2017 U.S. Dist. LEXIS 212743, 2017 WL 6622544, at *4 n.9 (E.D.N.Y. Dec. 28, 2017).

Here, Plaintiffs' claims under the New York State Constitution fail because they have insufficiently pled them and § 1983 provides an adequate alternative remedy. Though Plaintiffs allege that "Defendants, acting under color of law, violated plaintiffs's (sic) rights pursuant to §§ 5, 6 and 12 of the New York State Constitution," they do not explain how City Defendants allegedly violated these provisions. To the extent Plaintiffs premise their state and federal constitutional claims on the same theories of liability, § 1983 provides an adequate alternative remedy, and their claims under the New York Sate Constitution should be dismissed.

### 6) Plaintiffs failed to state a claim for respondeat superior because they have not adequately pled an underlying tort

Under the doctrine of respondeat superior, a plaintiff may recover against an employer for torts committed by an employee. Pehush v Town of Wallkill, 2018 U.S. Dist. LEXIS 8415, at

\*5 (S.D.N.Y. Jan. 17, 2018). Because the plaintiff must prove an underlying tort to recover under this doctrine, a court will dismiss a plaintiff's respondeat superior claim if it dismisses all of the plaintiff's claims against the principal's employees. <u>Harsco Corp. v. Segui</u>, 91 F. 3d 337, 349 (2d Cir. 1996). Here, the Court should dismiss Plaintiffs' respondeat superior claims against Defendants City of New York and Inspector Elliot Colon because Plaintiffs have failed to assert any viable state or federal claims against the Defendant Officers.

## **CONCLUSION**

For the reasons stated herein, Defendants City of New York, Police Officer Ramos, and Inspector Elliot Colon respectfully request that the Court dismiss Plaintiffs' First Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  New York, New York
    October 9, 2020

         JAMES E. JOHNSON
         Corporation Counsel of the City of New York
         *Attorney for Defendants City of New York,*
         *Inspector Elliot Colon, and Police Officer Luis*
         *Ramos*
         100 Church Street, Room 3-183
         New York, New York 10007
         (212) 356-2372

        By:  /s/ James R. Murray
           James R. Murray
           *Assistant Corporation Counsel*

CC:  Karamvir Dahiya, Esq. (By ECF)
    *Attorney for Plaintiffs*

    Rachel Aghassi, Esq. (By ECF)
    *Attorney for Defendant Stephen Weintraub*