UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KINGSLEY PALMER and SHARON PALMER,

                Plaintiffs,               **MEMORANDUM AND ORDER**
                                            19-CV-5542 (RPK) (CLP)

     -against-

THE CITY OF NEW YORK; INSPECTOR
ELLIOT COLON; E 40 BUYERS IG, LLC;
STEPHEN SAMUEL WEINTRAUB; REGGIE
a/k/a FRANK SINGH; POLICE OFFICER
RAMOS; ADAM GIACLAONE, Shield No.
13860; and NICHOLAS CARDIERI, Shield No.
11420,

                Defendants.
---------------------------------------------------------------X
RACHEL P. KOVNER, United States District Judge:

      Plaintiffs Kingsley Palmer and Sharon Palmer bring this action against the City of New

York, several officers of the New York City Police Department, E 40 Buyers, IG, LLC, and two

private individuals, alleging that defendants unlawfully removed them from their home and seized

their belongings.  Plaintiffs seek to hold defendants liable under the Bankruptcy Code, 11 U.S.C.

§ 362, the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C.

§ 1983, and various New York laws.  Specifically, plaintiffs claim that defendants violated an

automatic bankruptcy stay, deprived plaintiffs of their property without due process of law,

unlawfully converted their personal belongings, intentionally inflicted emotional distress on them,

and subjected Mr. Palmer to false arrest, malicious prosecution, and assault and battery.  *See* Am.

Compl. (Dkt. #32).

1

The City of New York, Inspector Elliot Colon, and Officer Ramos ("the City Defendants") have moved to dismiss plaintiffs' bankruptcy-stay claim based on lack of subject-matter jurisdiction and plaintiffs' remaining claims based on failure to state a claim. *See* Mem. of L. in Supp. of. City Defs.' Mot. to Dismiss ("City Br.") (Dkt. #40); City Defs.' Reply Br. ("City Reply") (Dkt. #47). Defendant Stephen Samuel Weintraub has moved to dismiss the claims against him based on failure to state a claim. *See* Mem. of L. in Supp. of Weintraub's Mot. to Dismiss ("Weintraub Br.") (Dkt. #37). For the reasons below, plaintiffs' claim of a violation of an automatic bankruptcy stay is dismissed as to all defendants based on lack of subject-matter jurisdiction. Plaintiffs' claims for malicious prosecution, for state constitutional torts, and for intentional infliction of emotional distress are dismissed as to Weintraub, the City of New York, Inspector Colon, and Officer Ramos. Plaintiffs' remaining claims against Weintraub and against the City of New York are dismissed in their entirety. Plaintiffs' claims for the deprivation of property without due process and for conspiracy under Section 1983 are dismissed. Plaintiffs' claims for false arrest, for assault and battery, and for conversion based on the loss of personal property may proceed. Plaintiffs' surviving state-law claims may also proceed against Inspector Colon for now under a theory of respondeat superior.

## BACKGROUND

Records from the Office of the City Register of the City of New York reflect that in 2008 plaintiff Kingsley Palmer obtained a mortgage from CitiMortgage, Inc. to finance the purchase of a property located at 891 East 40th Street in Brooklyn, New York ("the Premises"). Am. Compl. ¶ 14; *see* City Br. Ex. C (Dkt. #40-3). In 2013, CitiMortgage, Inc. initiated a foreclosure action against plaintiffs in the Supreme Court of New York, Kings County. Am. Compl. ¶ 15; *see* City

Br. Ex. D (Dkt. #40-4).  The mortgage and note were later assigned to MTGLQ Investors, L.P. *See* Am. Compl. ¶ 15; City Br. Ex. E at 2 (Dkt. #40-5).  In 2018, the Supreme Court entered a judgment of foreclosure and sale against plaintiffs as to the Premises ("the Foreclosure Proceeding").  Am. Compl. ¶ 15; *see* City Br. Ex. E.

Later that year, a report of sale was filed with the state court, *see* City Br. Ex. F (Dkt. #40-6), and a deed was recorded with the City Register reflecting that the Premises had been purchased by E 40 Buyers IG, LLC ("E 40 Buyers"), *see* City Br. Ex. G (Dkt. #40-7).  E 40 Buyers instituted a holdover proceeding against plaintiffs ("the Holdover Proceeding"), and in February 2019, the Civil Court of the City of New York, Kings County issued an order stating, "[p]ursuant to the testimony and evidence adduced at trial, [E 40 Buyers] is awarded a final judgment of possession, warrant to issue forthwith, execution stayed through March 31, 2019."  City Br. Ex. J at 1 (Dkt. #40-10).

On May 17, 2019, the Civil Court extended the stay of execution of the judgment of possession through June 5, 2019.  *See* City Br. Ex. K (Dkt. #40-11).  On May 30, 2019, the Supreme Court issued an order to show cause in the Foreclosure Proceeding.  Am. Compl. Ex. (Dkt. #33).  The order scheduled a hearing for June 26, 2019 and ordered that "[p]ending a hearing, all proceedings in the eviction action are stayed (Index No. 82907/2018)."  *Ibid*.  The index number specified is the index number for the Holdover Proceeding.  *See* City Br. Ex. J.  Plaintiffs allege that a copy of the stay order was sent to Weintraub, who was an attorney for E 40 Buyers, pursuant to the state court's direction.  Am. Compl. ¶ 16.

Plaintiffs allege that on June 11, 2019, three people from the Office of the New York City Marshals came to the Premises while Mr. Palmer was not there.  *Id*. ¶ 17.  Ms. Palmer answered

the door, and a marshal instructed her to leave the Premises, claiming that he had orders of eviction from the Civil Court. *Ibid.* Ms. Palmer told the marshal that Mr. Palmer had a "stay from the Supreme Court," but feared that she would be arrested and left the Premises. *Ibid.* Ms. Palmer called Mr. Palmer, who left work to retrieve a copy of the stay order from the Supreme Court, which he then "rushed" to the city marshals' office. *Ibid.* When Mr. Palmer arrived, the city marshals' office was closing for the day, and someone there asked Mr. Palmer to return the next day. *Ibid.*

Plaintiffs returned to the marshals' office the next day with a copy of the stay order. *Ibid.* A "woman attendant" at the marshals' office reached out to Frank Singh, also known as "Reggie," *ibid.*, whom plaintiffs allege is affiliated with E 40 Buyers, *id.* ¶ 12. The attendant told Singh "that he had to open the door because Mr. Palmer and his family had a right to be" at the Premises, but Singh refused. *Id.* ¶ 17. Plaintiffs then contacted their current counsel, who informed the marshals' office of the Supreme Court's stay order. *Ibid.* Plaintiffs allege that the marshals' office "agreed and further stated that plaintiffs . . . could move back to their house." *Ibid.*

Plaintiffs allege that Mr. Palmer tried to reach Singh, but that Singh ignored Mr. Palmer's calls and "changed the locks of the house," so that plaintiffs "were forced to break the lock" to enter it. *Id.* ¶ 18.

On June 20, 2019, Mr. Palmer filed for Chapter 13 bankruptcy. *Id.* ¶ 19.

On June 26, 2019, plaintiffs went to the Supreme Court for the hearing in the Foreclosure Proceeding. *Id.* ¶ 20; *see id*. Ex. Plaintiffs allege that Weintraub appeared at the hearing as counsel for E 40 Buyers, along with Singh, an attorney for MTGLQ Investors, and a "state court attorney." *Id*. ¶ 20. Mr. Palmer gave the state court attorney "papers showing that he ha[d] filed for Chapter

13 bankruptcy protection." *Ibid.* Mr. Palmer was told that because he had sought bankruptcy protection, the hearing would have to be adjourned to July 24, 2019, during which time "the status quo had to be maintained." *Ibid.*

According to plaintiffs, Weintraub then "got angry and started saying they are going to get[] cops and get [plaintiffs] thrown out." *Ibid.* Weintraub said that he would not use the marshals' office anymore, and that plaintiffs' bankruptcy papers were fake. *Ibid.* As he left the courtroom, Weintraub said, "I don't give a rat a** to those papers." *Ibid.*

Plaintiffs allege that the following evening, six police cars arrived at their home. *Id.* ¶ 21. Singh arrived with them. *Ibid.* Around four officers entered the house and told Mr. Palmer that he had to leave. *Ibid.* Mr. Palmer showed the police officers bankruptcy papers and a copy of the Supreme Court's stay order, and asked the officers to call their sergeant. *Ibid.* A sergeant came to the house and asked Mr. Palmer to leave. *Ibid.* When Mr. Palmer tried to reason further with the police, he was "pushed and manhandled with his hands forcibly pulled back for handcuffing" and "arrested in his home." *Ibid.* The police handcuffed Mr. Palmer and took him outside to a police car as his neighbors watched. *Ibid.*

According to the amended complaint, a police officer took Mr. Palmer to the precinct in Brooklyn, where an officer told Mr. Palmer that if he did not tell his wife to leave the house, they would arrest her as well. *Ibid.*

Plaintiffs further allege that around 9 p.m. that night, Mr. Palmer called Ms. Palmer while she was at work and asked her to come home immediately because he was being arrested. *Id.* ¶ 22. Ms. Palmer left work and came to the house, where she saw Singh changing the locks of the house. *Ibid.* Singh told Ms. Palmer to immediately leave the house and "kept shouting at her

telling her that he will have to call police on her." *Ibid.* Ms. Palmer went into the house, locked it from the inside, and tried to reach Mr. Palmer. *Ibid.* Ms. Palmer then received a call from Mr. Palmer, who was at the police precinct, and who told Ms. Palmer that she had to leave the house or she would be arrested. *Id.* ¶¶ 21-22. A police officer told Ms. Palmer on the phone that if she opened the door, they would not arrest her. *Id.* ¶ 22. She opened the door, and two police officers at the door told her to vacate the house immediately. *Ibid.* Ms. Palmer left the house and stayed with relatives. *Ibid.*

Mr. Palmer was detained at the police precinct until 1 a.m. and then was taken to central booking. *Id.* ¶ 23. Mr. Palmer was charged with criminal trespass. *Id.* ¶ 64. From central booking, Mr. Palmer was taken to criminal court, where a judge told him "to stay out of trouble and that everything will be sealed in 6 months." *Id.* ¶ 23. A certificate of disposition filed in Kings County criminal court reflects that on June 28, 2019, Mr. Palmer accepted an Adjournment in Contemplation of Dismissal ("ACD") on charges of second-degree criminal trespass and trespass. *See* City Br. Ex. S (Dkt. #40-19). Plaintiffs allege that Mr. Palmer did not know what happened and had a nervous breakdown because his belongings had been seized and he could not return home. Am. Compl. ¶ 23. Plaintiffs allege that the police officers allowed "[Singh] and his agents to loot" the personal belongings inside the home and did not "provide any means of reclaiming it in a timely manner." *Id.* ¶ 83; *see id.* ¶¶ 82-88.

Plaintiffs allege that Weintraub, along with Singh, "aided and abetted in the arrest of Mr. Palmer" and the "unlawful takeover" of plaintiffs' home. *Id.* ¶¶ 52, 66, 69. Plaintiffs allege that Weintraub knew that the plaintiffs had a stay order from the state court and the bankruptcy court, *id.* ¶ 52, but nevertheless "misled the state court and had the police called for false arrest," and that

the arrest took place "solely to benefit [Singh] and Weintraub" for reasons "solely known to the participating defendants," *id*. ¶¶ 13, 63.

Plaintiffs allege that the City of New York was "responsible for the policy, practice, supervision, implementation, and conduct of" Inspector Colon and Officers Ramos, Giaclaone, and Caridieri.  *Id.* ¶ 7.  Plaintiffs allege that Inspector Colon and Officers Ramos, Giaclaone, and Caridieri were employees of the City, and at the time of the alleged events, acting in the capacity of their employment.  *Id.* ¶¶ 8-10.  Plaintiffs further allege that the City has "created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue" and has "been alerted to the regular use of excessive force and false arrests by its police officers but has nevertheless exhibited deliberate indifference to such excessive force and false arrests."  *Id.* ¶ 32.  Plaintiffs allege that the City has allowed such polices to continue despite its awareness "from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers."  *Id.* ¶ 33; *see id.* ¶ 34.

Plaintiffs allege that they suffered "emotional damage" because of these events.  *Id.* ¶ 24.  Ms. Palmer is diabetic and suffers from swelling, a kidney ailment, and high blood pressure, and she could not access her medicines, which were at the house.  *Ibid.*  Plaintiffs experienced trauma from Mr. Palmer's arrest, which impacted their work, physical and mental health, and self-respect.

*Ibid.*  Plaintiffs allege that they lost the use of their home, as well as their personal belongings, including clothing, gadgets, jewelry, and furniture.  *Id.* ¶¶ 2, 24, 83, 88.

On October 1, 2019, plaintiffs filed this action against the City of New York, Inspector Colon, Officers Ramos, Giaclaone, and Cardieri, Singh, E 40 Buyers, and Weintraub.  *See* Compl. (Dkt. #1).  In the operative amended complaint, plaintiffs allege that defendants violated their constitutional rights under 42 U.S.C. § 1983 by depriving them of their property without due process, and through false arrest, malicious prosecution, and civil conspiracy.  *See* Am. Compl. ¶¶ 26-38, 42-55, 62-72, 81-88.  Plaintiffs bring a municipal liability claim against the City of New York.  *Id.* ¶¶ 31-34.  Plaintiffs allege that defendants violated an automatic bankruptcy stay under the Bankruptcy Code, 11 U.S.C. § 362.  *Id.* ¶¶ 92-94.  And plaintiffs allege that defendants are liable to them under New York law for constitutional torts, intentional infliction of emotional distress, assault and battery, and conversion.  *Id.* ¶¶ 39-41, 56-61, 73-80, 95-100.  Plaintiffs also seek to hold Inspector Colon liable under a theory of respondeat superior.  *Id.* ¶¶ 89-91.  As relief, plaintiffs seek compensatory damages, punitive damages, and attorney's fees and costs.  *Id.* ¶¶ 25, 30, 100.

The City Defendants have moved to dismiss plaintiffs' claims against them based on lack of subject-matter jurisdiction and failure to state a claim.  *See* City Br.; City Reply.  Weintraub has moved to dismiss the claims against him based on failure to state a claim.  *See* Weintraub Br.

## DISCUSSION

To survive a motion to dismiss a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the claim. *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,*

*S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If the Court "determines at any time that it lacks subject-matter jurisdiction" over a claim, the court must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). But it requires a plaintiff to allege sufficient facts to enable the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotations omitted). In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 678. The Court, however, is not obligated to adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid.*

In assessing plausibility, the Court considers the "allegations on the face of the complaint" as well as "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotations omitted); *see Glob. Network Commc'ns, Inc. v. City of New York*, 458

F.3d 150, 157 (2d Cir. 2006). The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Under these principles, courts commonly consider state court filings and mortgage documents underlying the complaint. *See RA Glob. Servs., Inc. v. Avicenna Overseas Corp.*, 817 F. Supp. 2d 274, 281 (S.D.N.Y. 2011); *see also, e.g.*, *Delgado v. City of New York*, No. 19-CV-6320, 2021 WL 2473817, at *1-2 (S.D.N.Y. June 17, 2021); *Nath v. JP Morgan Chase Bank*, No. 15-CV-3937, 2016 WL 5791193, at *1 n.1 (S.D.N.Y. Sept. 30, 2016); *Done v. Option One Mortg.*, No. 09-CV-4770, 2011 WL 1260820, at *2, *4, *8 (E.D.N.Y. Mar. 30, 2011).

### I.    Plaintiffs' claim based on a violation of an automatic bankruptcy stay is dismissed as to all defendants for lack of subject-matter jurisdiction.

Defendants are entitled to dismissal of plaintiffs' claim seeking damages for the violation of an automatic bankruptcy stay under 11 U.S.C. § 362. *See* City Reply at 2; Am. Compl. ¶¶ 92-94. The Court lacks subject-matter jurisdiction over that claim. The Second Circuit has held that "such a claim *must* be brought in the bankruptcy court, rather than in the district court." *E. Equip. & Servs. Corp. v. Factory Point Nat. Bank, Bennington*, 236 F.3d 117, 121 (2d Cir. 2001) (emphasis in original); *see United States v. Colasuonno*, 697 F.3d 164, 172 n.4 (2d Cir. 2012). Plaintiffs cite no contrary authority and therefore have not met their burden of establishing subject-matter jurisdiction. Accordingly, plaintiffs' claim under 11 U.S.C. § 362 is dismissed as to all defendants. *See, e.g.*, *Marin v. City of Utica*, 140 F. App'x 304, 304 (2d Cir. 2005); *Truong v. Litman*, 312 F. App'x 377, 378 (2d Cir. 2009).

## II.   Mr. Palmer's malicious-prosecution claims are dismissed as to Weintraub and the City Defendants.

Mr. Palmer has not stated a malicious-prosecution claim under 42 U.S.C. § 1983 or New York law.  "A § 1983 claim for malicious prosecution looks to the relevant state common law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013).  To plead a malicious-prosecution claim under Section 1983 or New York law, a plaintiff must allege that (i) the defendant initiated a prosecution against him, (ii) the defendant lacked probable cause to believe the prosecution could succeed, (iii) the proceeding was begun with malice, and (iv) the matter terminated in the plaintiff's favor.  *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).

Mr. Palmer has not adequately alleged that the criminal trespass proceedings on which his malicious-prosecution claims are based, Am. Compl. ¶ 64; *see id.* ¶¶ 62-72, terminated in his favor. A favorable termination indicative of innocence is necessary to establish a viable malicious prosecution claim because, in its absence, "the government's failure to proceed does not necessarily imply a lack of reasonable grounds for the prosecution."  *Smalls v. Collins*, 10 F.4th 117, 133 (2d Cir. 2021) (quotations omitted).

Here, the City Defendants have submitted Mr. Palmer's certificate of disposition showing that he accepted an ACD on charges of second-degree criminal trespass and trespass.  *See* City Br. Ex. S.  Courts in this circuit "routinely take judicial notice of certificates of disposition."  *Delgado*, No. 19-CV-6320, 2021 WL 2473817, at *2 (taking judicial notice of an ACD without converting a motion to dismiss to one for summary judgment); *see, e.g.*, *Mercano v. City of New York*, No. 15-CV-3544, 2017 WL 1969676, at *1 (S.D.N.Y. May 12, 2017); *Forbes v. City of New York*, No. 15-CV-3458, 2016 WL 6269602, at *4 (S.D.N.Y. Oct. 26, 2016); *Jurkowitsch v. City of New York*,

No. 14-CV-6810, 2015 WL 8489964, at *1 n.4 (E.D.N.Y. Dec. 9, 2015), *aff'd*, 673 F. App'x 44 (2d Cir. 2016).  Moreover, Mr. Palmer acknowledges that he "accepted an ACD."  Pls.' Opp'n to City Br. at 11 (Dkt. #44).  The Court therefore takes judicial notice of the ACD for the purpose of assessing Mr. Palmer's malicious-prosecution claims.

Under New York Criminal Procedure Law § 170.55(2), an ACD "is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice."  Because an ACD "leaves the question of innocence or guilt unanswered and is thus not a termination indicative of innocence," it is "well-settled" that a plaintiff's "acceptance of an ACD bars a malicious-prosecution claim." *Smalls*, 10 F.4th at 143; *see Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004); *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980); *see also Smith-Hunter v. Harvey*, 734 N.E.2d 750, 754 (N.Y. 2000).  Mr. Palmer cites no contrary authority.  *See* Pls.' Opp'n to City Br. at 11.

Mr. Palmer suggests that he may still pursue his malicious-prosecution claims because he did not genuinely consent to the ACD.  *See ibid.*; Am. Compl. ¶ 23.  But such a claim is unavailing, because "it is [p]laintiff who bears the burden of proving favorable termination." *Wheeler v. Buckley*, No. 16-CV-7441, 2019 WL 2024005, at *9 (S.D.N.Y. May 7, 2019) (dismissing a malicious-prosecution claim in case in which plaintiff asserted that "counsel agreed to an ACD without his consent").  Mr. Palmer has not pointed to some basis other than the ACD for determining that proceedings were terminated in his favor.  *See Lewis v. Hoovler*, No. 21-CV-2438, 2021 WL 1299491, at *3 (S.D.N.Y. Apr. 5, 2021) (dismissing *pro se* plaintiff's malicious-prosecution claim for failure to state a claim because plaintiff had pleaded guilty, and though she alleged that "her plea was not knowing and voluntary," she did not allege that her conviction had

been reversed, expunged, invalidated, or otherwise called into question).  In short, Mr. Palmer has not adequately pleaded favorable termination—through his suggestion that he did not consent to an ACD or through any other part of the amended complaint.

### III.  Plaintiffs' claim under the New York State Constitution is dismissed as to Weintraub and the City Defendants.

Plaintiffs have abandoned their claim under the New York State Constitution.  A federal court may deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in opposition papers the defendant's arguments for dismissal.  *See, e.g.*, *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021); *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018) (collecting cases); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018).  Here, plaintiffs have failed to respond to the arguments of Weintraub and the City Defendants that plaintiffs have not adequately pleaded any elements of a state constitutional claim.  *See* City Br. at 29; Weintraub Br. at 15.  Nor have plaintiffs responded to the City Defendants' contention that plaintiffs do not have an implied private right of action for violations of the New York State Constitution where an alternative remedy exists under Section 1983.  *See* City Br. at 29; *see also Talarico v. Port Auth. of New York & New Jersey*, 367 F. Supp. 3d 161, 171 (S.D.N.Y. 2019); *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018).  Plaintiffs have therefore abandoned any claims under the New York State Constitution.

### IV.  Plaintiffs' claim for intentional infliction of emotional distress is dismissed as to Weintraub and the City Defendants.

Plaintiffs fail to state a claim for intentional infliction of emotional distress ("IIED") under New York common law.  To state a claim for IIED under New York law, a plaintiff must plausibly allege (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial

probability of causing, severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) severe emotional distress. *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157-58 (2d Cir. 2014). "The first element sets a high bar to relief, requiring 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Turley*, 774 F.3d at 157). An IIED claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." *Turley*, 774 F.3d at 158. Moreover, "the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)). Indeed, "[a]ll four Appellate Division courts [in New York] have answered the question and held that it cannot." *Ibid.*

Plaintiffs' IIED claim does not adequately plead "extreme and outrageous conduct." The amended complaint alleges that the defendant police officers came to plaintiffs' home, were shown a copy of the state court's stay order and bankruptcy court filings, ignored plaintiffs' pleas to stay in their home, arrested Mr. Palmer in front of the neighbors, and "coerced" him into telling Ms. Palmer to leave the home. Am. Compl. ¶¶ 73-80. As courts in this circuit have consistently held when faced with similar claims, such allegations do not clear the bar of "so transcend[ing] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society," *Friedman*, 647 F. App'x at 47; *see, e.g.*, *Lockett v. City of Middletown*, No. 19-CV-8255, 2021 WL 1092357, at *7 (S.D.N.Y. Mar. 22, 2021); *Semencic v. Cty. of Nassau*, No. 18-CV-5244, 2020 WL 435294, at *9 (E.D.N.Y. Jan. 28, 2020), *appeal dismissed* (Aug. 18, 2020); *Alexander v. City of Syracuse*,

14

No. 17-CV-1195, 2018 WL 6591426, at *7-8 (N.D.N.Y. Dec. 13, 2018); *Santos v. Barber*, No. 17-CV-6475, 2017 WL 6409152, at *6-7 (W.D.N.Y. Dec. 15, 2017); *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 336-38 (S.D.N.Y. 2017); *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 313-14 (S.D.N.Y. 2005).

Moreover, to the extent that plaintiffs seek to recover for IIED on the ground that they suffered emotional distress because of the alleged false arrest, excessive force, malicious prosecution, and conspiracy, *see* Pl.'s Opp'n to Weintraub Br. at 7-8 (Dkt. #45); Pls.' Opp'n to City Br. at 15-16, plaintiffs' IIED claim "is encompassed entirely within other available tort remedies and is thus precluded under New York law." *Brewton v. City of New York*, 550 F. Supp. 2d 355, 369-70 (E.D.N.Y. 2008) (dismissing IIED claim premised on emotional distress resulting from false arrest and malicious prosecution); *see, e.g.*, *Salmon*, 802 F.3d at 251; *Vivar v. City of New York*, No. 18-CV-5987, 2020 WL 1505654, at *16 (S.D.N.Y. Mar. 30, 2020); *Zanfardino*, 230 F. Supp. 3d at 337-38.  Plaintiffs' IIED claim is therefore dismissed for failure to state a claim.

## V.     Plaintiffs' remaining claims against the City of New York are dismissed.

### A.  Plaintiffs have not stated a claim for municipal liability under Section 1983.

Plaintiffs have failed to state a claim against the City under 42 U.S.C. § 1983.  That provision "provides a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quotations omitted).  A municipality such as the City of New York can be liable under Section 1983 only if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).  Municipalities "are not vicariously liable under § 1983 for

their employees' actions." *Connick*, 563 U.S. at 60.  A plaintiff who seeks to hold a municipality liable under Section 1983 must allege (i) "an official policy or custom" that (ii) "cause[d] the plaintiff to be subjected to" (iii) a "denial" of a federally guaranteed right.  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  A plaintiff may allege a municipal policy or custom by pointing to "decisions of a government's lawmakers, the acts of its policymaking officials, . . . practices so persistent and widespread as to practically have the force of law," or "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick*, 563 U.S. at 61 (citations omitted).  But isolated acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

Plaintiffs have failed to state a claim against the City because they have not sufficiently alleged that they suffered constitutional violations as a result of "an official policy or custom." *Wray*, 490 F.3d at 195.  The closest the amended complaint comes to meeting this pleading requirement is its allegation that the City "created a policy or custom under which unconstitutional practices occurred" and that plaintiffs suffered damages because of that policy.  Am. Compl. ¶¶ 32-34.  But it is not enough for plaintiffs to offer "[t]hreadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Iqbal*, 556 U.S. at 678-79.  And plaintiffs' more specific allegations related to this case involve only allegations of harms caused by "non-policymaking municipal employees," *Jones*, 691 F.3d at 81.  None of the facts alleged suggest that plaintiffs' arrests and prosecutions reflected "persistent and widespread [practices],"

*Connick*, 563 U.S. at 61, or that any "policymaking official ordered or ratified the [City] employee's actions—either expressly or tacitly," *Jones*, 691 F.3d at 81.

Plaintiffs attempt to remedy the dearth of such allegations by attaching to their opposition papers a Wikipedia article titled "New York City Police Department corruption and misconduct" and linking to a searchable database of complaints filed with the City's Civilian Complaint Review Board ("CCRB").  *See* Pls.' Opp'n to City Br. at 12-14; *id.* Ex. B (Dkt. #44-2).  But the Court is unable to consider these attachments because the amended complaint neither attaches them nor incorporates them by reference.  *See, e.g.*, *Means v. City of New York*, No. 15-CV-4855, 2016 WL 1337278, at *4 n.5 (S.D.N.Y. Apr. 5, 2016) (declining to consider newspaper articles and instances of complaints filed with the CCRB in support of plaintiff's municipal liability claim because they were "external to the Amended Complaint and there [was] no basis to find that they [were] incorporated by reference into it").  What's more, the mere fact that a complaint is filed against the City alleging police misconduct does not show that the complaint was substantiated or that the misconduct in fact amounted to a constitutional violation.  *See Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) (plaintiffs could not establish a municipal "policy" merely by citing CCRB complaints and other civil suits against defendants); *see also, e.g.*, *White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (plaintiff failed to allege a persistent and widespread practice by citing a list of incidents where "none have resulted in an admission or finding of liability"); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 304 (S.D.N.Y. 2015) (similar).  Plaintiffs have therefore failed to state a claim for municipal liability.

**B. Plaintiffs' remaining state-law tort claims against the City of New York are dismissed because plaintiffs failed to comply with New York's notice-of-claim requirement.**

The City Defendants move to dismiss plaintiffs' state-law claims against the City, Inspector Colon, and Officer Ramos because plaintiffs have failed to comply with New York's notice-of-claim requirement. *See* City Br. at 25-26. Plaintiffs' remaining state-law claims (false arrest, conversion, assault and battery, and respondeat superior) are dismissed on this basis as to the City. I defer judgment on whether to dismiss the remaining state-law claims against Inspector Colon and Officer Ramos on the same ground, pending supplemental briefing.

New York General Municipal Law §§ 50-e and 50-i require a plaintiff asserting a claim against a city that is based on the negligence or wrongful act of that city or its officers, agents, or employees to file a notice of claim within 90 days of the incident that gives rise to the claim. *See Razzano v. Cty. of Nassau*, 599 F. Supp. 2d 345, 354 (E.D.N.Y. 2009). Under Section 50-i, a plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim, and that such notice was served at least 30 days prior to commencement of the action. *See Razzano*, 599 F. Supp. 2d at 354; *Davidson v. Bronx Mun. Hosp.*, 473 N.E.2d 761, 762-63 (N.Y. 1984). "Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality." *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019) (quotations omitted). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Ibid.* (quoting *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999)); *see Davidson*, 473 N.E.2d at 763. "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012).

Plaintiffs' state-law tort claims against the City of New York must be dismissed under these principles. The amended complaint does not allege that plaintiffs served a notice of claim on the municipal defendants at any time before commencing this suit. Nor do plaintiffs contend, in response to the City Defendants' motion to dismiss their state-law claims on this basis, that they filed a notice of claim. *See* Pls.' Opp'n to City Br. Instead, plaintiffs suggest that they had no obligation to file such a notice, on the theory that state law cannot restrict the relief afforded them in federal court. *Id.* at 14. That argument lacks merit. "[F]ederal courts entertaining state-law claims against [state] municipalities are obligated to apply the notice-of-claim provision." *Felder v. Casey*, 487 U.S. 131, 151 (1988). While New York's notice-of-claim requirement is preempted as to plaintiffs' federal claims, the same "is not true as to [plaintiffs'] state-law claims." *Diarra*, 771 F. App'x at 71. Because plaintiffs have failed to plead or prove compliance with New York's notice-of-claim requirements, plaintiffs' state-law claims for false arrest, conversion, assault and battery, and respondeat superior against the City are dismissed. *See, e.g.*, *ibid.*; *Medina v. City of New York*, No. 19-CV-9412, 2020 WL 7028688, at *13 (S.D.N.Y. Nov. 30, 2020); *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 348 (E.D.N.Y. 2013); *Pflaum v. Town of Stuyvesant*, 937 F. Supp. 2d 289, 308 (N.D.N.Y. 2013). Plaintiffs' claims against the City for state constitutional torts, malicious prosecution, and IIED also fail for that reason, in addition to plaintiffs' failure to plead those claims as explained above.

The City Defendants suggest that plaintiffs' state-law claims against Inspector Colon and Officer Ramos should also be dismissed because of plaintiffs' failure to comply with the notice-of-claim requirement. *See* City Br. at 25-26. The notice-of-claim requirement applies to claims against City employees for conduct within the scope of their employment, *see Higginbotham v.*

*City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (citing N.Y. Gen. Mun. L. § 50-k(6)), but "only if the [City] has a statutory obligation to indemnify such person," N.Y. Gen. Mun. L. § 50-e(1)(b).  In light of that limitation, courts disagree on whether a plaintiff must comply with the notice-of-claim requirement when bringing claims against a municipal employee for intentional torts, including possibly false arrest, IIED, conversion, and assault and battery.  *Compare LaGrange v. Ryan*, 142 F. Supp. 2d 287, 296 (N.D.N.Y. 2001) (notice-of-claim requirement applies); *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *10 (N.D.N.Y. Mar. 29, 2019) (same); *Dunham v. City of New York*, 295 F. Supp. 3d 319, 332 (S.D.N.Y. 2018) (same), *with Hardee v. City of New York*, No. 10-CV-7743, 2014 WL 4058065, at *8 (S.D.N.Y. Aug. 14, 2014) (notice-of-claim requirement does not apply); *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 300-01 (S.D.N.Y. 2009) (same); *Brenner v. Heavener*, 492 F. Supp. 2d 399, 405 (S.D.N.Y. 2007) (same).  Courts also disagree as to whether false arrest constitutes an intentional tort for the purpose of the notice-of-claim requirement.  *Compare Vesterhalt*, 667 F. Supp. 2d at 301, *with Brenner*, 492 F. Supp. 2d at 405.  Here, the limited briefing by the parties, which does not discuss this controversy, "is inadequate for the Court to assess the notice-of-claim requirement" as it applies to plaintiffs' state-law claims against the individual defendants.  *D.H. v. City of New York*, 309 F. Supp. 3d 52, 82 (S.D.N.Y. 2018).  Accordingly, the Court reserves judgment on this ground for dismissal, and the parties are directed to file letters within 21 days of the date of this order addressing the application of the notice-of-claim requirement to plaintiffs' remaining state-law claims, including any claim brought against Inspector Colon under a theory of respondeat superior.  The parties may also choose to address the question of which torts are intentional, should they find it relevant to how the notice-of-claim requirement applies to plaintiffs' claims.

VI.    **Plaintiffs' remaining claims against Weintraub are dismissed.**

A.    **Plaintiffs' Section 1983 claims against Weintraub are dismissed.**

Weintraub is entitled to dismissal of plaintiffs' Section 1983 claims against him.  Under Section 1983, "constitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014).  While private individuals are not state actors, such individuals can be liable under Section 1983 if they acted either "jointly" or "in conspiracy" with a state actor to deprive the plaintiff of a constitutional right. *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012); *see Betts*, 751 F.3d at 84 n.1.

To plead joint action under Section 1983, a plaintiff must "allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Betts*, 751 F.3d at 84 (quoting *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir. 1992)).  "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Ibid.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  To allege a Section 1983 conspiracy against a private party, a plaintiff "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  Under both theories of liability, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.* at 324-25; *see Rice v. City of New York*, 275 F. Supp. 3d 395, 403-06 (E.D.N.Y. 2017).

21

Plaintiffs have not adequately alleged that Weintraub is liable under any theory of state action. Weintraub, "as a private attorney, was not a state actor." *Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020); *see* Am. Compl. ¶¶ 13, 16, 20. Nor do plaintiffs' allegations give rise to the plausible inference that Weintraub acted in concert with any state actor to deprive plaintiffs of their constitutional rights. Plaintiffs allege that Weintraub said at the state-court hearing that he was "going to get[] cops and get [plaintiffs] thrown out" and that Weintraub "misled the state court and had the police called for false arrest." Am. Compl. ¶¶ 13, 20. But the amended complaint does not actually plead that Weintraub communicated with the police. *Cf. Koulkina v. City of New York*, 559 F. Supp. 2d 300, 320 (S.D.N.Y. 2008) (dismissing claims against private attorney alleged to have conspired with state officials because the complaint "fail[ed] . . . to detail any communication between these parties"). And even if it could be construed to allege that Weintraub told police that plaintiffs were at the home unlawfully, "[m]erely providing information to law enforcement, even if that information is false or mistaken, does not render the supplier of information a state actor . . . unless the police officers were improperly influenced or controlled by the private party." *Stewart*, 851 F. Supp. 2d at 446 (quotations omitted); *see, e.g.*, *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (private actor's "provision of background information to a police officer does not by itself make [him] a joint participant in state action under Section 1983").

Beyond this, the amended complaint states that Weintraub "aided and abetted in the arrest of Mr. Palmer" and the "unlawful takeover" of plaintiffs' home, and that the arrest took place "solely to benefit [Singh] and Weintraub" for reasons "solely known to defendants." Am. Compl. ¶¶ 52, 63, 69. But these speculative and conclusory statements do not give rise to the inference of

joint activity or conspiracy "above the speculative level." *Twombly*, 550 U.S. at 555; *see, e.g.*, *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (affirming dismissal of Section 1983 claim against private actors because plaintiffs' allegations of corrupt agreement were "uniformly conclusory, speculative, and implausible" and "rest[ed] on rank speculation"); *Ciambriello*, 292 F.3d at 324; *Stewart*, 851 F. Supp. 2d at 445. Because plaintiffs have not adequately alleged that Weintraub was a state actor or acting under color of state law, plaintiffs' Section 1983 claims against him must be dismissed.

### B. Plaintiffs' state-law claims against Weintraub for false arrest and civil conspiracy are dismissed.

#### i. Mr. Palmer fails to state a claim against Weintraub for false arrest under New York common law.

Weintraub is entitled to dismissal of Mr. Palmer's claim against him for false arrest under New York common law. *See* Weintraub Br. at 14. To plead false arrest under New York law, a plaintiff must adequately allege that (i) "the defendant intended to confine the plaintiff," (ii) "the plaintiff was conscious of the confinement," (iii) "the plaintiff did not consent to the confinement," and (iv) "the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019); *see De Lourdes Torres v. Jones*, 47 N.E.3d 747, 760 (N.Y. 2016). A private defendant can be liable for false arrest if the defendant "affirmatively induced" an arresting officer to make the arrest at issue. *Curley v. AMR Corp.*, 153 F.3d 5, 13-14 (2d Cir. 1998). Examples of affirmative inducement include "taking an active part in the arrest and procuring it to be made" and "showing active, officious and undue zeal to the point where the officer is not acting of his own volition." *Ibid.* In contrast, a party who simply supplies information to the police is not liable for false imprisonment when "police independently act to arrest a suspect on information

23

provided by [that] party"—even if "the information provided is later found to be erroneous." *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997).

Mr. Palmer fails to state a common-law false-arrest claim against Weintraub because he does not allege that Weintraub affirmatively induced his arrest.  Even construed liberally, the amended complaint does not allege that Weintraub took any action related to Mr. Palmer's arrest except that he "had the police called" despite knowing that plaintiffs had a "stay order from the state court and the bankruptcy court."  Am. Compl. ¶¶ 13, 52.  Plaintiffs do not include any details about what Weintraub communicated to police.  And they do not allege any other facts raising the inference that Weintraub took an active part in the arrest or acted with undue zeal, or that police "were not acting independently and of their own volition" when they arrested Mr. Palmer for trespass.  *Rice*, 275 F. Supp. 3d at 409 (dismissing false-arrest claim against private defendants who allegedly summoned the police to plaintiffs' apartment and provided them with an erroneously entered temporary restraining order, prompting police to forcibly enter and confine plaintiffs); *see, e.g.*, *Trec v. Cazares*, 185 A.D.3d 866, 868 (N.Y. App. Div. 2020) (dismissing false-arrest claim where plaintiff alleged that private defendant falsely reported to police that plaintiff committed trespass).  Mr. Palmer's common-law false-arrest claim against Weintraub is therefore dismissed.

### ii.   Plaintiffs fail to state a claim against Weintraub for civil conspiracy under New York common law.

Weintraub is entitled to dismissal of plaintiffs' claims against him for civil conspiracy under New York common law.  "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 102 (N.Y. 1986)).  As a result, where a plaintiff "fails

to state causes of action for [any] of the torts underlying the alleged conspiracy, . . . [the plaintiff] necessarily fails to state an actionable claim for civil conspiracy." *Ibid.*  As explained above, plaintiffs have not stated any tort claim against Weintraub.  Plaintiffs' claim for civil conspiracy against him must therefore be dismissed.  *See, e.g.*, *Pandozy v. Tobey*, 335 F. App'x 89, 91 (2d Cir. 2009); *Filler v. Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005); *White v. City of New York*, No. 17-CV-2404, 2019 WL 1428438, at *12 (S.D.N.Y. Mar. 29, 2019); *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006).

**VII.    Mr. Palmer's claims for false arrest against Officer Ramos may proceed.**

Officer Ramos seeks dismissal of Mr. Palmer's false-arrest claims against him under Section 1983 and New York law on the ground that probable cause supported the arrest.  "A [S]ection 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Ibid.* (quotations omitted). Probable cause exists when a law enforcement officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017).

Under these principles, it would be premature to dismiss Mr. Palmer's false-arrest claims against Officer Ramos.  Officer Ramos argues that he had probable cause to arrest Mr. Palmer for second-degree criminal trespass.  A person is guilty of second-degree criminal trespass when "he or she knowingly enters or remains unlawfully in a dwelling." N.Y. Penal L. § 140.15(1).  A

"dwelling" is defined as "a building which is usually occupied by a person lodging therein at night." *Id.* § 140.00(3). A person "enters or remains unlawfully" in a premises "when he is not licensed or privileged to do so." *Id.* § 140.00(5). Officer Ramos argues that he had probable cause to believe that Mr. Palmer was guilty of second-degree criminal trespass because the amended complaint acknowledges that plaintiffs broke a lock to reenter the Premises and continued to reside there with their belongings until June 27, 2019, the date of the arrest. *See* City Br. at 16; Am. Compl. ¶¶ 18, 48. But plaintiffs allege several additional facts relevant to the probable cause analysis. They allege that the arresting police officers were shown court documents reflecting a stay on plaintiffs' eviction and that police "ignor[ed]" those documents before arresting Mr. Palmer. *See* Am. Compl. ¶ 43. "[O]fficers may not disregard facts tending to dissipate probable cause when directly confronted with such facts before an arrest is made." *United States v. Pabon*, 871 F.3d 164, 175 (2d Cir. 2017); *see Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 70-71 (E.D.N.Y. 2015) (stating that while "an officer with a reasonable basis for believing that there is probable cause need not explore and eliminate every theoretically plausible claim of innocence before making an arrest, the police cannot 'deliberately disregard' information plainly conveyed by the perceived victim that would tend to negate probable cause and 'establish justification'" (quoting *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003))). Given plaintiffs' allegations, it would be premature to dismiss Mr. Palmer's false-arrest claims.

Officer Ramos alternatively contends that probable cause to arrest Mr. Palmer was supported by a call to the police in which the caller reported that an individual recently served with eviction papers had entered the Premises by breaking a lock. *See* City Br. at 5, 16-17. But those facts are contained in a "Sprint Report" put forward by the City, not in the amended complaint.

26

*See* City Br. at 16-17; *id.* Ex. R.  "[B]efore materials outside the record may become the basis for a dismissal, several conditions must be met," including that "no dispute exists regarding the authenticity or accuracy of the document" and "there exist no material disputed issues of fact regarding the relevance of the document."  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Taking the approach of the "majority of courts in our Circuit," I conclude that this Sprint Report is not properly considered on a motion to dismiss, because it is "not 'integral' to [the] false arrest complaint," and "it is not beyond dispute that the police report is a truthful description of the police officers' basis to arrest plaintiff," *Williams v. City of New York*, No. 14-CV-5123, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015); *see, e.g.*, *Azurdia v. City of New York*, No. 18-CV-04189, 2019 WL 1406647, at *5 (E.D.N.Y. Mar. 28, 2019); *Jurkowitsch*, No. 14-CV-6810, 2015 WL 8489964, at *1 n.4; *Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, at *6 (E.D.N.Y. Mar. 31, 2015).  Mr. Palmer has adequately pleaded that officers lacked probable cause to arrest him.

Officer Ramos also argues that he is entitled to dismissal of the false-arrest claims based on qualified immunity.  Qualified immunity protects government officials from damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  A police officer is entitled to qualified immunity for false arrest if the officer had at least "arguable probable cause to arrest the plaintiff."  *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quotations omitted). Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* at 633.  "Whether probable cause exists depends upon the

reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Under these principles, Officer Ramos has not offered a convincing argument for dismissal of Mr. Palmer's false-arrest claims at the pleadings stage. In arguing that he is entitled to qualified immunity, Officer Ramos contends that at least arguable probable cause existed based in part on the contents of the alleged phone call to police, and based in part on the contention that Mr. Palmer "had no documentation indicating he had a right to be there." City Br. at 19-20. But plaintiffs allege in the amended complaint that Mr. Palmer did present documents showing his right to remain in the home, Am. Compl. ¶ 43, and a complainant's alleged call to police is not properly considered on a motion to dismiss. Viewing the allegations in the complaint in the light most favorable to plaintiff, Officer Ramos has failed to establish at this stage that an officer of reasonable competence could have concluded that probable cause supported Mr. Palmer's arrest. *See Myers*, 819 F.3d at 633.

### VIII.   Mr. Palmer's claim for assault and battery against Officer Ramos may proceed.

Officer Ramos seeks dismissal of Mr. Palmer's assault-and-battery claim under New York law.[*] "Under New York law, an assault is an intentional placing of another person in fear of imminent harmful or offensive contact," and "a battery is intentional wrongful physical contact with another person without consent." *Rucks v. City of New York*, 96 F. Supp. 3d 138, 152 (S.D.N.Y. 2015). Where a police officer makes a lawful arrest, the "arrest is not an assault or

---

[*] Plaintiffs do not appear to bring a separate claim for the use of excessive force under Section 1983, but they include the phrase "excessive force" in the allegations supporting their claim for municipal liability. Am. Compl. ¶¶ 32-34. Any excessive-force claim against Officer Ramos would be subject to the same analysis as the assault-and-battery claim. *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) ("With the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and [New York] law assault and battery claims are substantially identical."); *see Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009).

battery under New York law, provided the force used is reasonable." *Figueroa v. Mazza*, 825 F.3d 89, 105 n.13 (2d Cir. 2016).  But where "an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *Rucks*, 96 F. Supp. 3d at 152-53; *see Johnson v. Suffolk Cty. Police Dep't*, 245 A.D.2d 340, 341 (N.Y. App. Div. 1997).

Officer Ramos has not presented a convincing argument that Mr. Palmer's assault-and-battery claim should be dismissed at this stage.  Officer Ramos argues that he had probable cause for the arrest and therefore that Mr. Palmer does not adequately allege unreasonable force in connection with an arrest.  City Br. at 26-27.  Officer Ramos also argues that Mr. Palmer has not alleged facts showing that the arresting officers placed him in fear of imminent harmful or offensive contact.  *Ibid*.  But as explained above, the amended complaint adequately alleges that Officer Ramos lacked probable cause to arrest Mr. Palmer.  And it alleges that the arresting officers manhandled, pushed, pulled, and handcuffed Mr. Palmer without his consent.  Am. Compl. ¶¶ 43, 56-59.  These allegations are adequate to state a claim for assault and battery in the absence of probable cause.  *See, e.g.*, *Johnson*, 245 A.D.2d at 341 ("As the arrest of the plaintiff by the defendant [police officer] was unlawful, [the officer] committed a battery when he touched the plaintiff during that arrest."); *Colon v. City of Rochester*, 419 F. Supp. 3d 586, 599 (W.D.N.Y. 2019) ("If plaintiffs' allegations are true, then they have stated facially valid claims for assault and battery under New York law, since any use of force to effect an arrest without probable cause can give rise to a claim for assault and battery under New York law.").  Officer Ramos is thus not entitled to dismissal of the assault-and-battery claim on this basis.

**IX.    Plaintiffs' claim of deprivation of property against Officer Ramos is dismissed.**

Officer Ramos is entitled to dismissal of plaintiffs' claim of deprivation of property against him.  Plaintiffs appear to allege two theories of deprivation of property.  First, plaintiffs allege that Officer Ramos unconstitutionally deprived them of the use of their home.  *See* Am. Compl. ¶¶ 2, 70-71, 86, 88.  Second, they allege that Officer Ramos unconstitutionally deprived them of the personal belongings that remained in their home after plaintiffs were removed.  *See id*. ¶¶ 81-88.  Plaintiffs fail to state a claim of deprivation of property under either theory because they have not adequately alleged that any such deprivation occurred without due process.

To prevail on a procedural due process claim under Section 1983, a plaintiff must (i) "identify a property right," (ii) "show that the state has deprived him of that right," and (iii) "show that the deprivation was effected without due process."  *Tang v. Visnauskas*, 847 F. App'x 24, 26 (2d Cir. 2021) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)).  In assessing whether a deprivation of property "was effected without due process," courts distinguish between "(a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."  *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).  "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy."  *Ibid.* (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing."  *Ibid.*

### A. Plaintiffs have not adequately alleged an unconstitutional deprivation of property based on their ejection from the home.

Plaintiffs have not pleaded a deprivation of property without due process based on their allegations that defendants unlawfully ejected plaintiffs from their home. *See* Am. Compl. ¶¶ 2, 12, 70-71, 86, 88. Plaintiffs allege deprivations stemming from actions that were "random and unauthorized," not carried out pursuant to an established state procedure. *Rivera-Powell*, 470 F.3d at 465. Specifically, while plaintiffs characterize defendants' actions in their opposition papers as part of a "system" of improper evictions, Pls.' Opp'n to City Br. at 2, plaintiffs plead in the amended complaint that defendants "knew or should have known that they had no lawful authority to detain plaintiffs, especially after having been shown the bankruptcy and state court paperwork," and that plaintiffs' removal from the home was "unlawful" and in contravention of "two court[] orders of their continued right to stay in their home," Am. Compl. ¶¶ 52-53, 69-71. These allegations establish that the defendants' alleged misconduct was "random and unauthorized." *See, e.g.*, *Dekom v. Nassau Cty.*, 595 F. App'x 12, 14 (2d Cir. 2014) (stating that the "plaintiffs' complaint makes clear that, in their view, defendants' actions violated New York law and local party policies and procedures, and therefore were random and unauthorized"); *Pelt v. City of New York*, No. 11-CV-5633, 2013 WL 4647500, at *12 (E.D.N.Y. Aug. 28, 2013) (allegations that police officers unlawfully evicted plaintiff from his apartment were necessarily allegations of "random and unauthorized" acts because "[p]laintiff's procedural due process claim largely rests on the assertion that [police] flouted certain state court notice procedures"); *Jones v. Holmes*, No. 11-CV-5490, 2013 WL 171217, at *3 (E.D.N.Y. Jan. 15, 2013) (prisoner's allegations that prison official confiscated his footwear "without following procedure" was an allegation that official's conduct was "random and unauthorized").

31

When a plaintiff alleges a random and unauthorized deprivation of property, a plaintiff can state a claim based on denial of due process only by alleging that the State did not provide any "meaningful post-deprivation remedy" for the deprivation. *Rivera-Powell*, 470 F.3d at 465. Plaintiffs have not adequately pleaded such a deficiency here, except for the conclusory allegation that defendants "did not . . . provide any means of reclaiming [the property] in a timely manner." Am. Compl. ¶ 85. Courts in this circuit have consistently held that such threadbare allegations fall short in the absence of any facts indicating that the post-deprivation processes available in New York state court for unauthorized deprivations of property were inadequate. *See G.I. Home Developing Corp. v. Weis*, 499 F. App'x 87, 89 (2d Cir. 2012) (stating that "an Article 78 proceeding is sufficient post-deprivation process for an unauthorized deprivation of property" in New York state court); *see also, e.g.*, *Pollok v. Chen*, 806 F. App'x 40, 45 (2d Cir. 2020) (affirming dismissal of deprivation of property claim on the pleadings because plaintiffs failed to plead the inadequacy of post-deprivation remedies); *Calley v. Town of Cortlandt*, No. 19-CV-5453, 2019 WL 11880434, at *4 (S.D.N.Y. July 8, 2019) (holding that plaintiffs failed to state procedural due process claim based on their allegedly unlawful ejection from their residence because plaintiffs "ma[d]e no allegation that the procedures available to them under state law were inadequate"); *Beck-Green v. Town of Fine*, No. 18-CV-1289, 2018 WL 6329835, at *4 (N.D.N.Y. Dec. 4, 2018) (noting that New York statute "provides a remedy for individuals subject to evictions undertaken in an unlawful manner" (citing *Lee v. Park*, 16 A.D.3d 986, 988-89 (N.Y. App. Div. 2005)), *report and recommendation adopted*, No. 18-CV-1289, 2019 WL 1493219 (N.D.N.Y. Apr. 4, 2019); *Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (holding that plaintiffs failed to state procedural due process claim based on allegations that city "forcibly ejected" them

32

from part of their property because they did not articulate "any reason why an Article 78 proceeding was an inadequate post-deprivation remedy in this case, and have offered no explanation why they failed to avail themselves of that remedy"); *Pelt*, No. 11-CV-5633, 2013 WL 4647500, at *12.  Because plaintiffs have not adequately alleged that they were deprived of their home without due process, plaintiffs fail to state a claim for unconstitutional deprivation of property on this basis.

### B.  Plaintiffs have not adequately alleged an unconstitutional deprivation of property based on defendants' seizure of their personal property.

Plaintiffs have also failed to allege a deprivation of property without due process based on their allegations that defendants unlawfully seized their personal belongings.   Specifically, plaintiffs allege that defendants seized their belongings "unlawfully" as "loot," and that defendants did so in contravention of their "duty" to preserve the personal property of individuals arrested and taken into custody.  Am. Compl. ¶¶ 23-24, 83, 88.  Plaintiffs' allegations that defendants seized their belongings unlawfully and by flouting their official duties again amount to allegations that defendants engaged in "random and unauthorized" acts.  *See, e.g.*, *Dekom*, 595 F. App'x at 14; *Jones*, No. 11-CV-5490, 2013 WL 171217, at *3.  Plaintiffs therefore must allege that the State did not provide any "meaningful post-deprivation remedy" for the deprivation of their personal belongings.  *Rivera-Powell*, 470 F.3d at 465.

Courts in this circuit have consistently held that New York state law provides an adequate post-deprivation remedy for such property seizures, such as a state-law claim for conversion or a court of claims action pursuant to state regulation, which would fully compensate plaintiffs for alleged losses of personal property.  *See, e.g.*, *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (stating that "New York in fact affords an adequate post-deprivation remedy in the form of,

*inter alia*, a Court of Claims action" under state regulations); *Stancati v. Cty. of Nassau*, No. 14-CV-2694, 2015 WL 1529859, at *6 (E.D.N.Y. Mar. 31, 2015) ("New York state law provides an adequate post-deprivation remedy in the form of a state law cause of action for conversion, which would fully compensate [p]laintiff for her alleged property loss."); *Jones*, No. 11-CV-5490, 2013 WL 171217, at *3 (noting that New York provides adequate post-deprivation remedies for the loss of personal property in the form of "in the form of state law causes of action for negligence, replevin, or conversion"); *Cameron v. Wise*, No. 09-CV-967, 2011 WL 1496341, at *6 (S.D.N.Y. Apr. 20, 2011) (holding that plaintiff "has available state remedies with the New York Court of Claims regarding his deprivation of property claim, so [his deprivation of property] claim should be dismissed with prejudice"), *report and recommendation adopted*, No. 09-CV-967, 2011 WL 3479295 (S.D.N.Y. Aug. 4, 2011).  Plaintiffs' claim for the deprivation of property without due process against Officer Ramos is therefore dismissed.

## X.     Plaintiffs' claim for conversion of their personal belongings may proceed against Officer Ramos.

Officer Ramos seeks dismissal of plaintiffs' claim for conversion of their personal belongings.  Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).  To state a claim for conversion under New York law, a plaintiff must plead (i) "a possessory right or interest in the property" and (ii) "defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016).  Conversion applies only to personal property, not real property.  *See Crawford v. Smith*, 130 A.D.3d 968, 969 (N.Y. App. Civ. 2015).

Plaintiffs cannot state a claim for conversion of their home because the home is real property. *See ibid.*; *Waldron v. Rotzler*, 862 F. Supp. 763, 771 (N.D.N.Y. 1994); *see also, e.g.*, *Jordan v. Tucker, Albin & Assocs., Inc.*, No. 13-CV-6863, 2017 WL 2223918, at *9 (E.D.N.Y. May 19, 2017); *Beare v. Millington*, No. 07-CV-3391, 2014 WL 1236750, at *4 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015).

Plaintiffs' claim for conversion of their personal belongings, however, may proceed. Plaintiffs allege that the City Defendants, after removing plaintiffs from their home, "unlawfully prohibited plaintiffs from securing their personal properties from the home," thereby allowing Singh and his company to "convert[] all [plaintiffs'] valuable assets to his personal use," Am. Compl. ¶¶ 96-98. Plaintiffs allege that, as a result of defendants' conversion, they "suffered emotional and financial damages[,] including loss of property." *Id.* ¶ 100. Courts in this circuit have declined to dismiss claims of conversion where a plaintiff pleads that municipal officials removed his belongings from his home and as a result caused the permanent loss of that property. *See, e.g.*, *Beck-Green*, No. 18-CV-1289, 2018 WL 6329835, at *1, *4 (plaintiffs stated a claim for conversion under New York law by alleging that defendants, including municipal officials, unlawfully evicted them from their home, "were given insufficient time to collect and move all of their belongings and that [d]efendants proceeded to discard or destroy what was left behind"); *Breon v. Perales*, No. 15-CV-6335, 2015 WL 7289399, at *6 (W.D.N.Y. Nov. 16, 2015) (plaintiff stated "a facially plausible claim for conversion" under New York law by alleging that municipal defendants unlawfully evicted her from her home and removed all her personal property from the premises, resulting in its disposal or damage); *Shpak v. Curtis*, No. 10-CV-1818, 2011 WL 4460605, at *2-3, *16 (E.D.N.Y. Sept. 26, 2011) (plaintiffs stated a claim for conversion by

35

alleging that defendants summoned the police to forcibly remove plaintiff from her property, that plaintiff "was forced to leave many items behind," and that defendants refused to return the property to plaintiffs).   Plaintiffs have stated a plausible claim for conversion under these principles.

The City Defendants argue that police cannot be held liable for conversion "merely [based on] evicting someone from a residence," City Br. at 28, relying solely on *Mutzner v. Comptroller*, No. 93-CV-5526, 1995 WL 495803 (S.D.N.Y. Aug. 18, 1995).   Like plaintiffs here, the plaintiffs in *Mutzner* had been evicted from their home and brought a conversion claim against a sheriff, claiming that the sheriff had unlawfully converted the personal property that remained in the home. *See id.* at *6.   The court in *Mutzner* granted summary judgment to the sheriff because plaintiff had conceded that "he never made any efforts to contact [the new owner of the property] concerning the whereabouts of the property or how to retrieve it" and thus the plaintiffs could not claim that any named defendant had converted or permanently withheld their property.   *Ibid.*   But plaintiffs here make no such concession.   The amended complaint alleges that defendants "unlawfully prohibited plaintiffs from securing their personal properties from the home."   Am. Compl. ¶ 97. Because the City Defendants have not offered a convincing argument for dismissal, plaintiffs' claim for conversion based on their personal property may proceed.

**XI.    Plaintiffs' claim for conspiracy against Officer Ramos and Inspector Colon is dismissed.**

The City Defendants are entitled to dismissal of plaintiffs' claim for conspiracy against them.   The amended complaint does not specify whether plaintiffs' claim is brought under Section 1983 or New York common law, *see* Am. Compl. ¶¶ 35-38, but plaintiffs rely only on Section 1983 in their opposition brief, Pls.' Opp'n to City Br. at 11-12.   Accordingly, to the extent that

plaintiffs brought a conspiracy claim under New York law, plaintiffs have abandoned that claim by failing to respond to the City Defendants' arguments for its dismissal.  *See, e.g.*, *Malik*, 841 F. App'x at 284; *Laface*, 349 F. Supp. 3d at 161.

Plaintiffs also fail to state a claim against Officer Ramos and Inspector Colon for conspiracy under Section 1983.  To allege a Section 1983 conspiracy, a plaintiff must allege (i) "an agreement between two or more state actors or between a state actor and a private entity," (ii) "to act in concert to inflict an unconstitutional injury," and (iii) "an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  "While conclusory allegations of a § 1983 conspiracy are insufficient," conspiracies may "be proven by circumstantial, rather than direct, evidence."  *Ibid.*

Plaintiffs do not sufficiently allege that Officer Ramos and Inspector Colon made an agreement to violate their constitutional rights.  Plaintiffs' only relevant allegation as to the City Defendants is that "defendants made an agreement to attempt to cover up" the order allegedly staying their eviction.  Am. Compl. ¶ 36.  Because plaintiffs allege no specific facts to substantiate this conclusory allegation, their conspiracy claim must be dismissed.  *See, e.g.*, *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 169 (E.D.N.Y. 2018) (dismissing Section 1983 conspiracy claim because plaintiff alleged a conspiracy, and that private defendant had answered police officers' questions, but failed to allege facts showing any agreement among defendants); *Perez v. Does*, 209 F. Supp. 3d 594, 599 (W.D.N.Y. 2016) (dismissing Section 1983 conspiracy claim because plaintiff alleged a conspiracy but "fail[ed] to provide any facts" pointing to defendants' agreement to violate his constitutional rights); *Vega v. Artus*, 610 F. Supp. 2d 185, 203 (N.D.N.Y. 2009) (dismissing Section 1983 conspiracy claim where plaintiff "d[id] not assert any facts giving

37

rise to a conspiracy, but instead vaguely assert[ed] conclusory statements relating to an alleged conspiracy among defendants").

## XII.   Plaintiffs' surviving state-law claims against Inspector Colon may proceed for now under a theory of respondeat superior.

Inspector Colon moves to dismiss plaintiffs' claims against him, which plaintiffs bring under a theory of respondeat superior.   *See* Am. Compl. ¶¶ 89-91.   A municipality and its supervisory officials may not be held liable under Section 1983 "for the conduct of a lower-echelon employee solely on the basis of respondeat superior." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991).   Instead, a plaintiff may only bring a claim against supervisory officials by alleging the "personal involvement of defendants in [the] alleged constitutional deprivations." *Hawthorne by Hawthorne v. Cty. of Putnam*, 492 F. Supp. 3d 281, 293 (S.D.N.Y. 2020); *see Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).   On the other hand, such defendants may be liable for the state-law torts committed by their employees under the theory of respondeat superior.   *See Ackerson v. City of White Plains*, 702 F.3d 15, 22 (2d Cir. 2012).

Inspector Colon argues that plaintiffs' claims against him premised on such a theory should be dismissed because "plaintiffs have failed to assert any viable state or federal claims against the defendant officers."   City Br. at 30.   Plaintiffs' Section 1983 claims against Inspector Colon that are premised on a respondeat superior theory must be dismissed because the amended complaint does not allege that Inspector Colon was personally involved in any of defendants' alleged misconduct.   *See Hawthorne by Hawthorne*, 492 F. Supp. 3d at 293.   But contrary to Inspector Colon's contention, plaintiffs have stated state-law claims for false arrest, assault and battery, and conversion against Officer Ramos.   I therefore decline to dismiss plaintiffs' state-law claims against Inspector Colon on the basis he proffers.

Nevertheless, plaintiffs' allegations against Inspector Colon appear deficient.  Under New York law, "a [s]heriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and [this] principle precludes vicarious liability for the torts of a deputy."  *D'Amico v. Corr. Med. Care, Inc.*, 120 A.D.3d 956, 958-59 (N.Y. App. Div. 2014) (affirming dismissal of state-law claims against supervisory official, including false arrest, malicious prosecution, IIED, and negligence claims, because all were "based only on respondeat superior"); *see, e.g.*, *Wierzbic v. Cty. of Erie*, No. 13-CV-978S, 2018 WL 550521, at *11 (W.D.N.Y. Jan. 25, 2018); *Case v. Anderson*, No. 16-CV-983, 2017 WL 3701863, at *24 (S.D.N.Y. Aug. 25, 2017); *Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *18 (W.D.N.Y. Mar. 12, 2013).  Further, the amended complaint offers nothing more than a single conclusory allegation against Inspector Colon that "[d]efendants' intentional tortious acts were undertaken . . . under the supervision of Inspector [Elliot] Colon."  Am. Compl. ¶ 90.  Neither the amended complaint nor plaintiffs' opposition brief sets forth a legal basis for holding Inspector Colon vicariously liable on this basis alone.  Because defendants did not seek dismissal on these grounds, plaintiffs may file a supplemental memorandum of law, responding only to these grounds for dismissal, within 21 days of the date of this order.  Defendants may file a reply, if any, within 14 days after plaintiffs' response is filed.

**CONCLUSION**

Plaintiffs' claim for a violation of an automatic bankruptcy stay is dismissed based on lack of subject-matter jurisdiction.  Plaintiffs' claims for malicious prosecution, state constitutional torts, and intentional infliction of emotional distress are dismissed as to Weintraub, the City of New York, Inspector Colon, and Officer Ramos based on failure to state a claim.  Plaintiffs' remaining claims against Weintraub and against the City of New York are dismissed in their entirety based on failure to state a claim.  Weintraub and the City of New York are accordingly dismissed from this action.  Plaintiffs' claims for the deprivation of property without due process and conspiracy under Section 1983 are dismissed based on failure to state a claim.  Plaintiffs' claims for false arrest, for assault and battery, and for conversion based on the loss of personal property may proceed.  And plaintiffs' surviving state-law claims against Officer Ramos may also proceed against Inspector Colon for now under a theory of respondeat superior.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: September 30, 2021
      Brooklyn, New York

40