UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

KINGSLEY PALMER and SHARON PALMER,

Plaintiffs,

v.

THE CITY OF NEW YORK; INSPECTOR ELLIOT COLON; E 40 BUYERS IG, LLC; STEPHEN SAMUEL WEINTRAUB; REGGIE a/k/a FRANK SINGH; POLICE OFFICER LUIS RAMOS; ADAM GIACLAONE, Shield No. 13860; and NICHOLAS CARDIERI, Shield No. 11420,

Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
1:19-CV-5542 (RPK) (CLP)

RACHEL P. KOVNER, United States District Judge:

Plaintiffs Kingsley and Sharon Palmer sued multiple defendants under state and federal law after Mr. Palmer was arrested for criminal trespass. The Court dismissed all of plaintiffs' claims against the defendants who have appeared in this suit except plaintiffs' claims against Police Officer Luis Ramos for false arrest under 42 U.S.C. § 1983 and New York law, and for assault-and-battery and conversion under New York law. Officer Ramos has moved for summary judgment on those claims. For the reasons that follow, Officer Ramos's motion is granted.

## BACKGROUND

### I. Factual Background

The following facts are undisputed. Plaintiffs Kingsley and Sharon Palmer, who are married, obtained a $325,000 mortgage to finance the purchase of their home in Brooklyn in 2008. Def.'s Rule 56.1 Statement ¶¶ 1–4 (Dkt. #113-1). That mortgage spawned three legal proceedings relevant to this suit: (1) a foreclosure action initiated by plaintiffs' mortgage-holder in New York

state court in 2013, in which plaintiffs' property was foreclosed on and sold to E40 Buyers IG, LLC ("E40 Buyers"); (2) a holdover action in New York City court, in which E40 Buyers sued plaintiffs for remaining in the property after the sale; and (3) a bankruptcy petition that Mr. Palmer filed in federal court on June 20, 2019. *See id.* ¶¶ 3–6, 9–11; 17.

The courts overseeing these cases had issued competing orders when the events underlying this lawsuit took place. In the foreclosure action, after the property was sold to E40 Buyers, Mr. Palmer filed an affidavit challenging the foreclosure based on "new evidence" showing that an assignment of his mortgage had been "fraudulent," among other defects. Bober Decl., Ex. L 2 (Foreclosure Action OTSC) (Dkt. #114-11). In response, on May 21, 2019, the state court set a show-cause hearing on Mr. Palmer's challenges for June 26 and stayed "all proceedings" in the holdover action until the hearing. *Id.* 2–3. In the holdover action, the court awarded possession of the property to E40 Buyers, and on May 17, 2019, it stayed execution of the judgment until June 5, 2019, to give plaintiffs time to vacate the property. Bober Decl., Ex. J (2/28/2019 Decision) (Dkt. #114-9); *id.*, Ex. K (5/17/2019 Order) (Dkt. #114-10). But the court never stayed execution of its judgment beyond that date and—despite the stay order—it issued a "Marshal's Legal Possession" notice on June 11, 2019, which stated that E40 Buyers had "legal possession of [the property] pursuant to warrant of civil court." *Id.*, Ex. T (Marshal's Legal Possession Notice) (Dkt. #114-19). Finally, in the bankruptcy case, the court had done nothing by June 27, 2019 aside from setting a hearing date and issuing a notice of deficient filing. *See* Ex. P (Bankruptcy Docket) 2–4 (Dkt. #114-15).

The conflict between the May 21 stay order issued by the state court and the June 11 Marshal's Legal Possession notice issued by the city court created confusion outside the courtroom. The New York City Marshal's Office evicted plaintiffs from their home on June 11,

but plaintiffs allege—and defendant does not contest—that Mr. Palmer showed a copy of the state court's stay order to the Marshal's Office the next day, and the Marshal's Office agreed that "plaintiffs . . . could move back to their house." Am. Compl. ¶ 17 (Dkt. #32). However, the owner of E40 Buyers, Frank Singh a/k/a Reggie Rawana, did not permit plaintiffs to return to the property. Plaintiffs thus allege that they "were forced to break [a] lock [Mr. Rawana had installed] to get into their own [h]ome." *Id.* ¶ 18.

On June 27, 2019, Mr. Rawana called the New York City Police Department to report that plaintiffs had broken the lock on the property and were trespassing by living in it after they were evicted. Bober Decl., Ex. CC (Ramos Dep. Tr.) 23:15–24:22 (Dkt. #114-21); Def.'s Rule 56.1 Statement ¶ 20. Officer Ramos and several other officers responded to the call. Ramos Dep. Tr. 25:17–26:3. When the officers arrived, Mr. Palmer and Mr. Rawana provided them with documents to support their competing claims to the property. Mr. Rawana gave the officers the Marshal's Legal Possession notice, and Mr. Palmer gave the officers various filings from his bankruptcy case and the state court's order to show cause—which included the order staying proceedings in the city court. Ramos Dep. Tr. 34:7-12; Pls.' Opp'n to Mot. for Summ. J. 2 (Dkt. #111) ("Pls.' Opp'n"); Def.'s Rule 56.1 Statement ¶ 24.

Mr. Palmer's discussion with the arresting officers, including Officer Ramos, is captured on the officers' body-worn cameras. The footage reflects that Mr. Palmer told the officers he had "a stay from the [New York] Supreme Court . . . and from the federal bankruptcy court," and directed them to a stack of paperwork, which Lieutenant Jonathan Sudsky, Officer Ramos's supervisor, and other officers looked through. Ex. V (Sudsky Footage) 1:00-1:50. After he finished looking at the papers, Lieutenant Sudsky asked Mr. Palmer, "where does it say in this paperwork that you have a stay?", to which Mr. Palmer responded, "I have a stay because I'm

going through the bankruptcy." *Id.* 1:55–2:02. Lieutenant Sudsky replied, "where does it say that, because I'm not seeing it?" and explained that the documents reflected that Mr. Palmer had been "legally evicted." *Id.* 2:02–2:36. While Mr. Palmer continued to insist that he "do[es] have a stay," he did not point the officers to any document indicating as much, and none of the arresting officers who examined Mr. Palmer's documents found support for Mr. Palmer's claim. *Id.* 2:36–3:36; Def.'s Rule 56.1 Statement ¶ 28; *see also* Sudsky Footage 5:02–5:30 (capturing another officer stating "I went through [the paperwork] a thousand times and there is nothing in here that says anything").

Mr. Palmer was in handcuffs for most of this interaction and he did not complain about them at any point. *See* Ex. X (Cardieri Footage) 0:55–5:20; Def.'s Rule 56.1 Statement ¶ 33. After the conversation ended, Police Officers Nicholas Cardieri and David Meytin walked Mr. Palmer to the police vehicle and directed him to enter. Cardieri Footage 5:20–6:20; Def.'s Rule 56.1 Statement ¶¶ 34–36. At that point, Mr. Palmer appears to have said something about his handcuffs, because Officer Cardieri agreed to "loosen [the handcuffs] up a little bit," and switched his handcuffs to a "double cuff," in which two handcuffs are linked together. Def.'s Rule 56.1 Statement ¶ 36; Cardieri Footage 6:20–8:05. Mr. Palmer testified that he said his handcuffs were tight later during the car ride, and that the officers in the car—Officer James Campiglia and Officer Meyton—responded by stating that "[w]e are almost there." Bober Decl., Ex. A (Palmer Dep. Tr.) 60:17–61:12 (Dkt. #114-1); Def.'s Rule 56.1 Statement ¶¶ 37–38. Mr. Palmer acknowledged that he did not suffer any physical injuries from his handcuffs, and was not otherwise physically harmed during the arrest. Palmer Dep. Tr. 40:9–11; 61:16–25.

Mr. Palmer was arraigned on charges of trespass and second-degree criminal trespass and later accepted an adjournment in contemplation of dismissal for both charges. Def.'s Rule 56.1

Statement ¶ 40. He did not return to the property after his arrest, but he testified that personal items in the home belonging to him and Mrs. Palmer were "stolen," though he did not know who stole them. *Id.* ¶¶ 41–42; Palmer Dep. Tr. 58:22–59:19.

## II. Procedural History

Plaintiffs brought this case against the City of New York, the officers allegedly involved in his arrest, and several other parties. *See* Am. Compl. ¶¶ 6–13a. The Court dismissed all claims against the appearing defendants except plaintiffs' Section 1983 claim against Officer Ramos for false arrest, and their corresponding state-law claims against Officer Ramos for false arrest, assault and battery, and conversion. *See* Sep. 30, 2021 Memorandum & Order; May 15, 2023 Memorandum & Order.

Officer Ramos has now moved for summary judgment on the surviving claims against him. After receiving two extensions, plaintiffs missed the deadline to file an opposition to Officer Ramos's motion, and have not submitted a formal opposition brief or a response to Officer Ramos's Local Rule 56.1 statement of undisputed facts, as Local Rule 56.1 requires. *See* E.D.N.Y. Local Rule 56.1(b). However, the Court construes plaintiffs' letter opposing Officer Ramos's motion to dismiss for lack of prosecution as a response to Officer Ramos's motion for summary judgment because it argued that disputed facts preclude summary judgment. *See* Jan. 14, 2026 Order.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing

law." *Ibid.* (citation and quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## DISCUSSION

Officer Ramos's motion for summary judgment is granted. Mr. Palmer's false-arrest claim fails because taking the facts in the light most favorable to plaintiffs, Mr. Palmer's arrest was supported by probable cause. Because the undisputed facts show that Officer Ramos was not involved in the events underlying plaintiffs' claims for assault-and-battery and conversion, he is also entitled to summary judgment on those claims.

### I. Mr. Palmer's False Arrest Claim Fails Because Officer Ramos Had Probable Cause To Arrest Him.

Mr. Palmer's false-arrest claim is foreclosed by probable cause. Under the Fourth Amendment and New York law, a "claim of false arrest . . . may not be maintained if there was probable cause for the arrest." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002); *see Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("Under New York law, the existence of probable cause is an absolute defense to a false arrest claim.") An officer has probable cause to arrest if he "ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017) (citation omitted).

Officer Ramos had probable cause to arrest Mr. Palmer for trespass and second-degree criminal trespass. A person is guilty of trespass "when he knowingly enters or remains unlawfully in or upon premises," and of second-degree criminal trespass when he "knowingly enters or remains unlawfully in a dwelling." N.Y. Penal L. §§ 140.05, 140.15(1). A "dwelling" is defined as "a building which is usually occupied by a person lodging therein at night." *Id.* § 140.00(3). A person "enters or remains unlawfully" in a premises "when he is not licensed or privileged to do so." *Id.* § 140.00(5). Officer Ramos had probable cause to believe that Mr. Palmer was guilty of both offenses based on (1) Mr. Rawana's call to the NYPD stating that Mr. Palmer was trespassing; (2) Mr. Palmer's presence at the property on June 27, despite the Marshal's Legal Possession notice indicating that E40 Buyers had legal possession of it as of June 11; and (3) Mr. Palmer's inability to identify any court order that vacated or contradicted the Marshal's Legal Possession notice. These factors each provided credible evidence that supports a finding of plausible cause. *See Walston v. City of New York*, 754 F. App'x 65, 66 (2d Cir. 2019) (officer had probable cause to arrest for criminal trespass based on a property owner's report that plaintiffs "were not supposed to be living at the premises"); *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, No. 15-CV-6876, 2016 WL 561917, at *4 (N.D. Ill. Feb. 12, 2016) (courts orders banning plaintiff from property, combined with plaintiff's presence on the property, were "more than sufficient to create probable cause" for trespass); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007) ("It is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness who they reasonably believe to be telling the truth."). In combination, they easily support a finding of probable cause here.

Mr. Palmer's argument that Officer Ramos lacked probable cause to arrest him because he gave the arresting officers the state court's order staying proceedings in the holdover action until June 26, 2019 is unpersuasive. Pls.' Opp'n 2. To begin, Mr. Palmer never identified to the arresting officers the portion of the state court's order that he now contends is relevant. Sudsky Footage 1:00–3:40; Def.'s Rule 56.1 Statement ¶ 26. Thus, while "officers 'may not disregard facts tending to dissipate probable cause' when directly confronted with such facts before an arrest is made," *United States v. Pabon*, 871 F.3d 164, 175 (2d Cir. 2017) (citation omitted), the officers were not "directly confronted" with any facts undermining the Marshal's Legal Possession notice, nor did they find that information after looking through Mr. Palmer's paperwork, Def.'s Rule 56.1 Statement ¶¶ 26–28. In these circumstances, the officers were not required to "continue investigating, sifting and weighing" Mr. Palmer's paperwork before arresting him. *Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006). In any case, even if the officers had seen the portion of the state court's order that ordered a stay, it would not vitiate probable cause. The stay appeared to have elapsed by June 27, the date of Mr. Palmer's arrest, and the stay did not clearly render the Marshal's Legal Possession notice defective. The bare fact that Mr. Palmer's paperwork included the state court's stay order thus does not indicate that Officer Ramos lacked probable cause to arrest Mr. Palmer.

## II. Mr. Palmer's Assault-and-Battery and Conversion Claims Fail Because Officer Ramos Was Not Involved in Any Conduct Underlying Those Claims.

Mr. Palmer's assault-and-battery and conversion claims fail for lack of personal involvement. Under New York law, an assault-and-battery claim against an officer requires that the officer have had some physical contact with the plaintiff. *See Wyllie v. Dist. Atty. of Cnty. of King*s, 2 A.D.3d 714, 718–19 (2d Dep't 2003) (dismissing assault-and-battery claim against defendants who had no "physical contact with the plaintiff"); *Allen v. Antal*, 665 F. App'x 9, 13–

14 (2d Cir. 2016) (same); *Zeng v. Chell*, No. 19-CV-3218 (JGK), 2022 WL 624873, at *6 (S.D.N.Y. Mar. 1, 2022) (same). While Mr. Palmer broadly alleged in his complaint that the arresting officers "intentionally manhandled, push[ed] and pull[ed] Mr. Palmer['s] hands to his back, [and] handcuffed him," Am. Compl. ¶ 37, the only physical contact that he has since identified to support his assault-and-battery claim is his tight handcuffing. But Officer Ramos was not involved in Mr. Palmer's handcuffing; he did not handcuff Mr. Palmer and was not present during the car ride to the police precinct, during which Mr. Palmer allegedly complained that his handcuffs were tight. Def.'s Rule 56.1 Statement ¶ 30; *see* Pls.' Opp'n 3 (acknowledging Officer Ramos's claim that he "did not handcuff Mr. Palmer" and "was not present for transport or processing," and not pointing to any contrary facts). Thus, even if Mr. Palmer's handcuffing constituted assault-and-battery—which the Court doubts—Officer Ramos would not be liable for it.

Plaintiffs' conversion claim against Officer Ramos, which is based on Officer Ramos allegedly "unlawfully prohibit[ing] [p]laintiffs from securing their personal properties from the [h]ome," fails for similar reasons. Am. Compl. ¶ 97. Under New York law, conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights," *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*, 660 N.E.2d 1121, 1126 (N.Y. 1995) (citation omitted), and it requires that "the defendant exclude the owner from exercising her rights over [her] goods." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 404 (2d Cir. 2006). Courts accordingly reject conversion claims when there is no evidence that the defendant exercised dominion or control over the allegedly converted property—either directly or by ordering others to do so. *See Manhattan Sports Restaurants of Am., LLC v. Lieu*, 137 A.D.3d 504, 504 (1st Dep't 2016) (dismissing conversion claim when it

was "not alleged that defendant exercised dominion and control"); *Ronsdorf v. Banque et Caisse D'Epargne De L'Etat Luxembourg*, No. 98-CV-6819 (TPG), 1999 WL 688299, at *3 (S.D.N.Y. Sept. 3, 1999) (granting summary judgment to defendant when plaintiff "failed to present any evidence that defendant exercised dominion and control"), *aff'd*, 210 F.3d 355 (2d Cir. 2000); *cf. Breon v. Perales*, No. 15-CV-6335 (MAT), 2015 WL 7289399, at *6–7 (W.D.N.Y. Nov. 16, 2015) (concluding that plaintiff stated a "facially plausible" conversion claim based on indirect control). Plaintiffs have not identified any evidence indicating that Officer Ramos exercised dominion and control over the personal property in their home that they alleged was converted. Indeed, plaintiffs have not identified any evidence that suggests that Officer Ramos was involved in the disposition of their personal property after Mr. Palmer's arrest in any way. Plaintiffs thus cannot bring a conversion claim against Officer Ramos.

**CONCLUSION**

For the foregoing reasons, Officer Ramos's motion for summary judgment is granted.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: October 2, 2026
Brooklyn, New York